**AZURITE CORP. LTD., individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**AMSTER & CO., formerly known as Lafer, Amster & Co., Arnold Marvin Amster, Barry Stuart Lafer, and Joel Richard Packer, Defendants.**

No. 89 Civ. 0746 (PKL).

United States District Court, S.D. New York.

Feb. 13, 1990.

Shearman & Sterling, New York City (Joseph T. McLaughlin, James P. Tallon, Barbara A. Breen, Thomas Swift and Aaron Dannenberg, of counsel), for plaintiffs.

Shea & Gould, New York City (Milton S. Gould, of counsel), for defendants Amster & Co. and Arnold M. Amster.

Hellring Lindeman Goldstein Siegel Stern & Greenberg, Newark, N.J. (Jonathan L. Goldstein and Herbert J. Stern, of counsel), for defendant Barry S. Lafer.

Buchwald & Kaufman, New York City (Don D. Buchwald, of counsel), for defendant Joel R. Packer.

## OPINION AND ORDER

LEISURE, District Judge.

This is an action for damages arising out of an alleged conspiracy to violate federal securities laws by failing to disclose legally-required, material information relating to a proposed proxy contest for control of a corporation.[1] Plaintiffs allege that defendants have violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. Plaintiffs also seek recovery under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Defendants have now moved to dismiss plaintiffs' claims pursuant to Fed.R.Civ.P. 9(b) and

---

1. This is not the only action commenced as a result of the transactions underlying this case. The Securities and Exchange Commission filed a civil action against defendants alleging violations of sections 10(b) and 13(d) of the Securities Exchange Act of 1934. *Securities and Exchange Commission v. Amster & Co.,* 88 Civ. 8587 (CSH).

12(b), and have also moved for summary judgment on plaintiff's claims under § 10(b) pursuant to Fed.R.Civ.P. 56.

## BACKGROUND

Plaintiff Azurite Corporation ("Azurite")[2] (hereinafter referred to interchangeably as "plaintiff" or "plaintiffs") was a shareholder of Graphic Scanning Corporation ("Graphic") until February 25, 1986, when Azurite sold the last of its shares. Graphic is a Delaware corporation which owns and operates telephone paging and cellular telephone franchises. Defendants Arnold Amster, Barry Lafer, and Joel Packer were general partners of Lafer, Amster & Co., now known as Amster & Co. ("Amster"). Amster is a registered broker-dealer located in New York City. Defendants undertook a successful proxy fight to gain control of Graphic during 1986. Defendant Joel Packer ("Packer") was elected to the Board of Directors of Graphic after the completion of the proxy fight, and served as Chairman of the Board from September 1987 to December 1988.

Plaintiff alleges that in or about the eight months preceding the successful proxy fight, defendants filed a series of false and misleading statements with the Securities and Exchange Commission ("SEC"), relating to purchases of shares of Graphic stock. Defendants allegedly falsely represented in these statements that they did not intend to seek control of Graphic, but were purchasing shares solely for investment purposes, when, in fact, defendants were purchasing the shares with intent to wage a proxy fight for control. Plaintiff further alleges that because of defendants' failure to disclose the purpose of their purchases, the price of Graphic's stock remained lower than it would have been had defendants truthfully disclosed

their intention to seek control of Graphic. Plaintiff sold its stock after defendants had filed statements indicating their involvement with Graphic was for investment purposes only. Accordingly, plaintiff alleges that it received less money for its stock than it would have received if defendants had truthfully revealed the purpose of their purchases.[3]

Section 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d), requires that persons, who acquire more than five percent of a class of security, file a statement with the SEC and the issuer that identifies the owners of the shares at issue, the source of the funds purchasing such shares, the purpose of the purchases, and other pertinent information. The information is to be included in a form known as Schedule 13D, as prescribed by the SEC. Amendments to previously filed Schedules 13D are to be submitted when any material facts have changed. *See* Rules 13d–1, 13d–2, 17 C.F.R. §§ 240.13d–1, 240.13d–2.

Defendants filed their first Schedule 13D related to Graphic on August 19, 1985.[4] That statement explained that the reporting group had acquired beneficial ownership of five percent of the outstanding shares of Graphic stock and was holding those shares for investment purposes only. Plaintiff alleges that certain information in the August 1985 Schedule 13D was false. In particular, plaintiff claims that the signatory of the statement, William R. Grant, a partner at Lafer, Amster & Co., understated his beneficial holdings in Graphic by some 500,000 shares. Complaint ¶¶ 21–23.

Defendants filed the first amendment to their Schedule 13D on September 17, 1985, indicating an increase in their holdings of Graphic stock. The amendment stated that the holdings were still for investment pur-

---

**2.** Plaintiffs have filed this case as a class action. To date, no class has been certified pursuant to Fed.R.Civ.P. 23. Plaintiffs have filed motion papers for certification, but further submissions on and determination of that motion have been suspended pending the outcome of the motion currently before the Court. Defendants have, however, indicated their intention to oppose the motion to certify the proposed class.

**3.** Azurite contends that numerous other Graphic shareholders sold stock during the period in which defendants allegedly misrepresented the purpose of their purchases. The shareholders who sold stock during this period are the members of the proposed class.

**4.** The Schedule 13D was filed for defendants and others under the name of Lafer, Amster & Co., Amster's predecessor firm.

poses only. Plaintiff contends that individual defendants Barry Lafer and Arnold Amster met with officers of Graphic in November 1985 and further represented that the stock purchases were for investment purposes only. Complaint ¶ 26. On November 27, 1985, defendants filed another amendment to their Schedule 13D, indicating additional purchases. A further amendment followed on December 3, 1985.

Plaintiff maintains that on or before February 3, 1986, defendants changed the purpose of their investments in Graphic and had decided to attempt to gain control of Graphic. Complaint ¶¶ 29–33.[5] A meeting was allegedly held on February 3, 1986 at which defendants proposed and discussed a proxy contest for control of Graphic. Complaint ¶¶ 36–37. On February 4, 1986, defendants allegedly met with a limited partner of Lafer, Amster & Co., and revealed their intent to conduct a proxy fight for Graphic. Complaint ¶ 38.

No additional amendment to defendants' Schedule 13D was filed until February 10, 1986. That amendment indicated the purchase of additional shares of Graphic stock, but did not state any change in the purpose of those purchases. On February 18, 1986, defendants filed a further amendment to the Schedule 13D. This amendment, known as amendment six, indicated that defendants were considering waging a proxy battle for Graphic. Defendants indicated in their filing that these considerations were only preliminary and were derived from information revealed by Graphic in a Form 8K filing dated February 7, 1986. Plaintiff asserts that defendants' actions prior to the February 10, 1986 filing demonstrate clearly that defendants' intentions had changed prior to February 7, 1986. Plaintiff contends that on February 3, 1986, defendants purchased $1.7 million in Graphic convertible debentures, and accumulated an additional $1.4 million in Graphic stock between February 4 and February 7, 1986. Complaint ¶ 50. On February 24 and 25, 1986, shortly after defendants filed

amendment six, plaintiff sold 340,000 shares of Graphic stock. Complaint ¶ 48.

On March 3, 1986, defendants filed amendment seven to their Schedule 13D. For the first time, defendants indicated a decision to engage in a proxy battle for control of Graphic. Plaintiff charges that this filing was materially false in stating that defendants had not decided to pursue the acquisition of control of Graphic until February 28, 1986, and in other respects as well. Complaint ¶ 49.

After defendants revealed their intention to pursue a proxy battle for Graphic, the price of Graphic stock increased. The stock went from a trading range of around $7.00 per share to around $9.00 per share. Complaint ¶ 51. Plaintiff sold its shares prior to defendants' revelations, and thus prior to the price increase. Accordingly, plaintiff demands over $30 million in damages. Complaint ¶ 71.

## DISCUSSION

Defendants have attacked plaintiff's complaint on three grounds. First, they assert that plaintiff has failed to allege its RICO claims with sufficient particularity as required by Fed.R.Civ.P. 9(b). Second, defendants contend that even if the RICO charges have been plead with sufficient particularity, the RICO count should be dismissed under Fed.R.Civ.P. 12(b)(6) for failing to state a claim for which relief can be granted. Third, defendants argue that plaintiff's securities law claim under Section 10(b) is time barred, and thus summary judgment should be entered for defendants on that claim pursuant to Fed.R. Civ.P. 56.

### A) Sufficiency of Allegations of Fraud

 Defendants have challenged the sufficiency of plaintiff's complaint under Fed.R.Civ.P. 9(b). Rule 9(b) states:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other con-

---

**5.** This same allegation is contained in the complaint in *Securities and Exchange Commission v.* *Amster & Co.,* No. 88 Civ. 8587 (CSH).

dition of mind of a person may be averred generally.

In a motion to dismiss a complaint for failure to plead fraud with particularity, a plaintiff's allegations must be taken as true. *See, e.g., Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986). The complaint's fraud allegations must be specific enough to allow the defendant "a reasonable opportunity to answer the complaint" and must give "adequate information" to allow the defendant "to frame a response." *Ross v. A.H. Robins, Co.*, 607 F.2d 545, 557–58 (2d Cir. 1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Rule 9(b) is designed to provide a defendant fair notice of a plaintiff's claim, in order to enable a defendant to prepare a defense, protect defendant's reputation or goodwill from harm, and reduce the number of strike suits. *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). Rule 9(b) must be read, however, in conjunction with Rule 8(a), which requires a plaintiff to plead only a short, plain statement upon which he is entitled to relief. *A.H. Robins, Co.*, 607 F.2d at 557 n. 20.

Where a RICO claim includes allegations of fraudulent conduct, the Second Circuit has required that the pleading of fraud meet the requirements of Rule 9(b). *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. Jan. 25, 1990). The Second Circuit has made a distinction between the pleading of fraud in a RICO conspiracy, and the pleading of the conspiracy itself. "Rule 9(b) applies only to fraud or mistake, not to conspiracy. [The] pleading of a conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal requirements of Rule 8(a)." *Id.* at 26 n. 4. *See also, Rose v. Bartle*, 871 F.2d 331, 366 (3rd Cir.1989); *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*, 660 F.Supp. 1362, 1372 (D.Conn.1987).

■ A plaintiff alleging a violation of RICO must plead the conspiracy in a clear and concise fashion pursuant to Rule 8, and must plead any underlying allegations of fraud which account for any of the required predicate acts of a RICO conspiracy with particularity. In the case before the Court, plaintiff alleges three fraudulent activities as predicate acts. First, plaintiff alleges that defendants filed false Schedule 13D amendments in violation of federal securities laws. Defendants do not challenge the sufficiency of the pleading of securities fraud. Second, plaintiff alleges that defendants used the mails to distribute the false Schedule 13D amendments. Third, plaintiff contends that defendants used the telephone and other instruments of wire transmission in furtherance of their fraudulent acts. Defendants do challenge the sufficiency of the pleading of these acts of mail and wire fraud.

"In alleging mail fraud, the plaintiff must set forth the contents of the items mailed and specify how each of the items was false and misleading." *Official Publications, Inc. v. Kable News Co., Inc.*, 692 F.Supp. 239, 245 (S.D.N.Y.1988), *aff'd in part, rev'd in part*, 884 F.2d 664 (2d Cir. 1989). Plaintiff has sufficiently pled the content of the alleged mail fraud. Plaintiff asserts that it was the false Schedule 13D amendments which were sent through the mail to the SEC and Graphic. The Court finds that the content of the items mailed has been sufficiently pleaded, as has been the nature of the false statements.

■ The Court's inquiry cannot end here, however. Plaintiff has based his claim of mail fraud on information and belief and not on actual knowledge. Complaint ¶ 21. In general, allegations of fraud cannot be based on information and belief. *Luce, supra*, 802 F.2d at 54. However, that requirement is relaxed where the matter pled is peculiarly within the knowledge of the defendant. *DiVittorio, supra*, 822 F.2d at 1247. The Court finds that the question of how the originals of the Schedule 13D amendments were transmitted to the SEC, how copies were transmitted to Graphic, and who among the defendants was responsible for the transmittal of the amendments, represent information and knowledge peculiarly within the control of defendants prior to discovery. In any

event, defendants can clearly glean from the complaint the nature of plaintiff's mail fraud allegations and prepare their defense.[6]

▮ Plaintiff's allegations of wire fraud are more troubling. Plaintiff alleges that defendants used the telephone to further their schemes. However, the Complaint is remarkably thin in its assertions regarding wire fraud. Telling, in its papers in response to this motion, plaintiff attempts to link its wire fraud allegations to its successfully pleaded mail fraud claims. Wire fraud is a separate act from mail fraud and must, itself, be pled with particularity. The Complaint contains only vague references to the use of the telephone or other means of wire transmissions, and fails to aver who made use of the wire facilities and for what purpose. Accordingly, the Court cannot find that plaintiff has sufficiently pled its allegations of wire fraud, and thus any claims of wire fraud must be dismissed under Rule 9(b). Leave to replead is granted.[7]

▮ Defendants further attack the sufficiency of plaintiff's complaint on the grounds that it fails to allege the elements of RICO with particularity. In light of the Second Circuit's language in *Hecht, supra*, the Court rejects defendants' arguments. The pleading of RICO elements goes to the existence of a sufficient conspiracy to trigger the RICO statute. Some of those elements, namely the predicate acts, involve fraud, and those fraud elements must be pled with particularity. However, those elements, such as the existence of an enter-prise, the existence of a pattern of racketeering, and the existence of continuity go to the alleged RICO conspiracy. These elements do not need to be pled with particularity, and must only meet the requirements of Rule 8. The Court finds that plaintiff has provided a clear and concise statement of their claims sufficient to meet the requirements of Rule 8.[8]

## B) Motion to Dismiss

Defendants contend that plaintiff's RICO claims should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). "Dismissal of a complaint for failure to state a claim is a 'drastic step'". *Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76, 80 (2d Cir.1985) (citations omitted). "The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support therof.'" *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (citations omitted). Thus, a motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Morales v. N.Y. State Dept. of Corrections*, 842 F.2d 27, 30 (2d Cir.1988). In deciding a motion to dismiss, the Court must accept the plaintiff's allegations of facts as true together with such

---

**6.** Defendants attack plaintiff's mail fraud allegations on the grounds that defendants regularly used private express mail services to transmit the amendments, and, thus, plaintiff's allegations should fail. It may well be true that such facilities were used and that this information could defeat the mail fraud claims in a substantive motion. However, evidence is not before the Court that would substantiate such an assertion, and thus the Court does not find defendants' assertion germane to its Rule 9(b) motion.

**7.** The Court notes that, particularly in RICO actions, it has become an all too common practice for litigants granted leave to replead to make only minor changes in the original com-plaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed.R.Civ.P. 11. Conversely, a renewed Rule 9(b) motion after an adequate and thorough repleading can also be viewed as frivolous.

**8.** Defendants attack plaintiff's failure to assert continuity, pattern and gain in the complaint. The failure of a pleading to assert elements of a claim is an issue for a Rule 12 motion, but is not an appropriate subject for a Rule 9(b) motion.

reasonable inferences as may be drawn in its favor. *Murray v. City of Milford, Connecticut,* 380 F.2d 468, 470 (2d Cir.1967). *See also Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686.

Defendants assert four grounds for dismissing plaintiff's RICO claims. First, defendants contend that the complaint fails to allege that defendants derived income from a pattern of racketeering activity. Second, defendants claim that plaintiff has not alleged any injury as a proximate result of the purported RICO activity. Third, defendants assert that plaintiff has failed to allege that defendants conducted the affairs of an enterprise through a pattern of RICO activity. Fourth, defendants claim plaintiff has not alleged a pattern of racketeering. In addition, in letters addressed to the Court and sent after this motion had been fully submitted, defendants assert that the complaint should be dismissed for failure to allege continuity of racketeering activity as defined by the United States Supreme Court in *H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The Court will address these contentions in turn.

■■■ Defendants first maintain that plaintiff has failed to allege that defendants received and invested income from their racketeering as required under 18 U.S.C. § 1962(a).[9] Plaintiff claims that defendants, by failing to reveal the true purpose of their stock purchases in their Schedule 13D filings, managed to obtain large quantities of Graphic stock at a price at least $2.00 per share less than they would have paid if they had truthfully revealed their intent to wage a proxy battle. The difference between the price defendants paid for the stock and the price they would have paid if their reporting had been truthful is, according to plaintiff, the income from racketeering as defined in § 1962(a).

Surprisingly, it appears that no Court has been directly faced with the question of whether the ability to purchase stock at a price less than its true market value due to fraud is income under § 1962(a). Defendants, in asserting that such a "discount" is not income rely on *Hemmings v. Barian,* 822 F.2d 688 (7th Cir.1987). In *Hemmings,* the plaintiff claimed that the defendant had promised to make payments to the plaintiff on a loan but had failed to do so and had then spent the money not delivered to the plaintiff in a new enterprise. Judge Richard Posner refused to find that the plaintiff had properly alleged a violation of § 1962(a). However, the grounds for his finding are less than pellucidly clear, as illustrated by the dramatically different readings given the case by the parties in the instant case. It appears that Judge Posner felt that the money used by the defendant to fund the new enterprise was not itself received by fraud, even though that same money might have gone to the plaintiff who was fraudulently denied repayment of his loan.

Defendants contend that Judge Posner's ruling should be read to mean that money saved as a result of fraudulent activity cannot be income for the purpose of § 1962(a). The Court does not draw this conclusion from Judge Posner's opinion. Instead, it appears that Judge Posner was focusing on the plaintiff's failure to plead a connection between the fraud and the income invested in the alleged enterprise. *Hemmings,* 822 F.2d at 692. Further, the Court finds that the meaning proposed by the defendant would unreasonably restrict the meaning of income in a RICO action. The Court cannot find that savings, which are the direct result of fraudulent or otherwise illegal activity, are not income. It is clear that, if defendants had purchased their stock at an artificially low price created by their illegal activity and had then immediately resold it after the price had moved to its true market level, the differ-

---

**9.** Section 1962(a) reads in part:
It shall be unlawful for any person who has received any income derived directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income or the proceeds of such income, in acquisition of any interest in, or the establishment of any enterprise which is engaged in or the activities of which affect interstate or foreign commerce.

ence between the amount paid and the amount earned would be considered income. Defendants want the Court to find that, because they did not sell the stock they purchased at the artificially low price, but instead simply used the savings they garnered to purchase more stock than they would have had if the price had been at its true market value, they did not derive any income. This would be an unseemly result that the Court will not adopt.

Plaintiff has clearly pleaded the receipt of income and its investment into an enterprise engaged in interstate commerce. Plaintiff avers that defendants received illegal discounts on purchases of Graphic stock made prior to March 3, 1986. Complaint ¶¶ 50, 65. Further, plaintiff alleges that the savings received as a result of the illegally obtained lower stock price were invested in Graphic and G & P Independent Management Corp. ("G & P"), a corporation set up by defendants, allegedly for the sole purpose of gaining control of Graphic. Complaint ¶¶ 10, 66. The Court finds that these averments, viewed in a light most favorable to plaintiff, state a sufficient claim to survive a motion to dismiss.

 Defendants' second assertion is that plaintiff has failed to allege injury under § 1962(a). "Violation of § 1962(a) consists of using or investing the proceeds of a pattern of racketeering activity. One who has sustained injury as a result of the investment may sue for a violation of section 1962(a). By contrast, it cannot be said that one who has suffered injury by reason of the predicate acts of racketeering has thereby been injured by the investment of the proceeds." *In re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. 493, 511 (S.D.N.Y.1987); *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147, 1149 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989).

Plaintiff has not alleged injury from defendants' investment of income received from their racketeering activity. Plaintiff has alleged that it was harmed by defendants' predicate acts of securities and mail fraud due to the resulting artificially low stock price. However, plaintiff has not

pled how it was harmed by defendants' investment of funds obtained as result of the predicate acts. Accordingly, plaintiff's claims under § 1962(a) must be dismissed.

Defendants further challenge plaintiff's pleading on the grounds that the complaint does not allege that defendants engaged in a pattern of racketeering and conducted the affairs of a RICO enterprise through a pattern of racketeering. The courts have been struggling with the definitions of "pattern" and "enterprise" since the passage of the RICO statute. The Supreme Court moved last term toward resolving a growing dispute among the Circuits over the meaning of basic terms within the statute. *H.J. Inc., supra,* 109 S.Ct. 2893.

 A threshold issue for the Court in this case is whether there existed an enterprise through which the defendants carried out their alleged racketeering activities. The statute defines an "enterprise" as "[A]ny individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact though not a legal entity." 18 U.S.C. § 1961(4). " '[An] enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct.' " *United States v. Indelicato,* 865 F.2d 1370, 1376 (2d Cir.), *cert. denied sub nom. Furnari v. United States,* —— U.S. ——, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989), *quoting United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2525, 69 L.Ed.2d 246 (1981). Reading the Complaint in the light most favorable to the plaintiff, it is apparent that plaintiff has plead the existence of at least one enterprise. It is elemental that an enterprise does not need to be formally created, but can exist as an association in fact. Plaintiff has pled that defendants, acting as a association in fact, conducted their activities aimed at manipulating the price of Graphic's stock. Further, plaintiff alleges that G & P acted as the RICO enterprise after it was incorporated on February 21, 1986.

 Having found that there is an enterprise, the Court turns to the question of the existence of a pattern of racketeering.

Two cases provide particular guidance in this area: the Supreme Court's decision in *H.J. Inc., supra,* and the Second Circuit's ruling in *Beauford v. Helmsley,* 865 F.2d 1386 (2d Cir.), *vacated and remanded,* —— U.S. ——, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989), *reaffirmed* 893 F.2d 1433 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). The Supreme Court found that the definition of a RICO pattern has two elements: relationship and continuity. "[T]o prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." 109 S.Ct. at 2900 (emphasis in original).

The requirement of relationship among predicate acts is intended to limit the broad reach of the RICO statute. "Congress's goal in fashioning its definition of 'pattern of racketeering' was to exclude from the reach of RICO criminal actions that were merely 'isolated' or 'sporadic.'" *Beauford, supra,* 865 F.2d at 1391. But this does not mean that the term relationship should be read too narrowly. "[A] RICO pattern may be established without proof of multiple schemes, multiple episodes, or multiple transactions; and [ ] acts that are not widely separated in time or space may nonetheless properly be viewed as separate acts of racketeering activity for purposes of establishing a RICO pattern." *Id.* The Supreme Court stated, " '[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *H.J. Inc., supra,* 109 S.Ct. at 2901.

Plaintiff has alleged multiple acts of false filings with the SEC and transmittal of those filings through the use of the mails. These acts could be considered part of a single scheme to defraud Graphic's shareholders and officers. Even if there is only a single scheme, that does not defeat plaintiff's RICO claim. *Beauford, supra,* 865 F.2d at 1391. The acts alleged by plaintiff are related and are not "isolated" or "sporadic." Therefore, the Court finds that plaintiff has sufficiently pleaded relationship.

The more difficult question is whether plaintiff has sufficiently pled continuity. The concept of continuity has proven to be the most indistinct of all the interpretations given to the statutory frame of RICO by the courts. Justice Blackmun, writing for the Court, addressed the definition of continuity in a RICO enterprise in detail in *H.J. Inc.,* indicating that the term should be read broadly.

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

109 S.Ct. at 2902 (emphasis in original) (citations omitted).

Just as Justice Blackmun indicates that "continuity" should not be defined narrowly, Justice Blackmun's own efforts to provide guidance should not be given too constricted a reading or be read in isolation. Thus a court should not merely look at the duration of the enterprise and activities alleged, check that against the time periods outlined by the Supreme Court, and decide whether continuity exists. The determination of the existence or non-existence of continuity requires the court to look beyond the bare enterprise and predicate acts. It is necessary for the court to examine the "overall context in which the acts took place" in order to ascertain whether sufficient continuity exists. *United States v. Kaplan,* 886 F.2d 536, 542 (2d Cir.1989); *Procter & Gamble*

*v. Big Apple Industrial Buildings, Inc.,* 879 F.2d 10, 17 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990); *Amsler v. Corwin Petroleum Corp.,* 715 F.Supp. 103, 104 (S.D.N.Y.1989). *See Beauford, supra,* 865 F.2d at 1391.

 In the instant case, plaintiff has alleged a series of illegal acts spread over a period of, at most, seven months in which defendants committed various related acts of mail and securities fraud. Based on the Complaint, the securities and mail fraud scheme concluded on March 3, 1986 with the filing of amendment seven which truthfully reported defendants' intent to wage a proxy battle for control of Graphic. While plaintiff alleges that amendment seven was materially false, Complaint ¶ 49, it does not allege that defendants continued to file false Schedule 13D amendments after March 3, 1986. Further, the fraud alleged was directed against plaintiff Azurite and other shareholders and was designed to obtain a discount by manipulating the stock price through false Schedule 13D filings. Once the true nature of defendants' activities was revealed and the stock price moved to its approximate market level, the fraud aimed at the stock price necessarily ended.

The fact that the scheme alleged was a closed-end, short-term scheme is not sufficient, in and of itself for the Court to find that continuity does not exist. However, other courts have indicated that there is a burden on plaintiffs alleging short-term, closed-end schemes to demonstrate in their pleadings the threat of continuity. Simply pleading such a scheme, without more, is insufficient. *Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F.Supp. 579, 584 (S.D.N.Y.1989). In a letter to the Court written after the decision in *H.J. Inc.,* plaintiff indicated that because defendants continue to control Graphic and G & P, continue to hold the stock in Graphic, and are in the business of investing in corporations, the Court should conclude that there is a threat of continuity sufficient to support plaintiff's claims. Plaintiff urged the Court to allow it to use discovery to determine that the actions in the instant case were part of defendants' regular course of business. Plaintiff relies on language in *H.J. Inc.* stating, "[A] threat of continuity might be established at trial by showing that the alleged bribes were a regular way of conducting ... business, or a regular way of conducting or participating in the conduct of the alleged and ongoing RICO enterprise." 109 S.Ct. at 2906.

Plaintiff's reliance on Justice Blackmun's closing paragraph is misplaced. The pleading in *H.J. Inc.* indicated that the alleged bribery was extensive in its duration and was on-going at the time the complaint was filed. No such allegation can be found in the complaint before this Court. Plaintiff's pleading is clear: illegal acts were committed by defendants between August 1985 and March 1986 that resulted in injury to plaintiff Azurite and the putative class in February 1986 when those stockholders sold their stock at a price below the true market value. There the pleading ends. There is nothing in the pleading alleging that defendants committed these same or similar acts before, or that they committed them again in the period between March 1986 and February 1989 when this action was filed. Further, there is nothing in the pleadings that would give rise to even an inference of a threat of similar future activities by defendants. Plaintiff's letter to the Court is not a part of its pleadings, and the accusations contained therein will not be so considered.[10] Plaintiff has not shown any threat of continuity. In light of the brief duration of the alleged scheme, and the failure to plead any threat of on-going or past activity, the Court finds that plaintiff's RICO claims must be dismissed in their entirety.

### C) Summary Judgment Motion

 Defendants have further moved for summary judgment pursuant to Fed.R. Civ.P. 56 with respect to plaintiff's federal

---

10. Even if the Court were to consider the allegations contained in the letter, the Court notes that as they are allegations of fraud; the pleading of such allegations would have to meet the requirements of Rule 9(b).

securities laws claims on the ground that the action was not brought within the applicable statute of limitations.

Traditionally, federal courts have adopted analogous state law statutes of limitations where the federal law at issue does not provide one of its own. Such has long been the case with private actions brought under § 10(b) of the Securities Exchange Act of 1934. However, recently the Third Circuit adopted a one year statute of limitations for claims arising under § 10(b). *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3rd Cir.) (*en banc*), *cert. denied*, —— U.S. ——, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). The Third Circuit acted in response to two Supreme Court decisions which adopted uniform federal statutes of limitations for two specific federal claims. *See Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (RICO); *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (collective bargaining agreements). Defendants urge the Court to follow the lead of the Third Circuit and adopt a uniform one year statute of limitations for actions under § 10(b).

The Second Circuit has long applied New York State's statute of limitations for common law fraud to actions brought under § 10(b), which provides that actions shall be brought within six years of discovery. *Armstrong v. McAlpin*, 699 F.2d 79, 86 (2d Cir.1983). This Court, and other courts in this District have faced the request to change the law in this Circuit presented by defendants with some frequency since *Data Access*, and have repeatedly rejected that request. *See, e.g., Matignon Finance, Inc. v. Ameritel Communications Corp.*, 1989 WL 153282, 1989 U.S.Dist. LEXIS 14937, 15–16 (S.D.N.Y.1989); *Huang v. Sentinel Government Securities*, 709 F.Supp. 1290, 1301 n. 10 (S.D.N.Y. 1989); *Eickhorst v. American Completion and Development Corp.*, 706 F.Supp. 1087, 1102 (S.D.N.Y.1989); *Metropolitan Securities v. Occidental Petroleum Corp.*, 705

F.Supp. 134, 138 (S.D.N.Y.1989). The Court rejects that challenge once again today. The Court shall apply the New York statute of limitations to plaintiff's claims under § 10(b). Accordingly, defendants' motion for summary judgment on plaintiff's federal securities laws claims is denied.

CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. Defendants' motion for summary judgment is denied.

Plaintiff's wire fraud claims are dismissed pursuant to Rule 9(b).

Plaintiff's claims under 18 U.S.C. § 1962(a) are dismissed for failure to allege investment injury.

Plaintiff's RICO claims are dismissed in their entirety for failure to allege continuity.

Plaintiff's § 10(b) claims shall be governed by New York State's statute of limitations for common law fraud.

Leave to replead is granted.[11]

SO ORDERED.