Michael GERSTENFELD, M.D., Plaintiff,

v.

Steven NITSBERG, et al., Defendants.

No. 99 Civ. 8610(SHS).

United States District Court,
S.D. New York.

Dec. 1, 1999.

Allen Neil Wooster, Wooster & Wooster, LLP, Garden City, NY, for plaintiff.

Kenneth G. Roberts, Wolf, Block, Schorr & Solis–Cohen LLP, New York City, for defendant.

## ORDER

STEIN, District Judge.

In a Report and Recommendation dated November 23, 1999, Magistrate Judge Andrew J. Peck recommended (1) dismissal of plaintiff's RICO claims (the sixth, seventh, and eighth claims for relief), and (2) denial of defendants' Rule 11 motion. On November 30, 1999, plaintiff notified the Court that it was waiving its right to replead the RICO claims. Upon *de novo* review of Judge Peck's Report and Recommendation,

IT IS HEREBY ORDERED that Judge Peck's Report and Recommendation dated November 23, 1999, is adopted by this Court, plaintiff's RICO claims (the sixth, seventh, and eighth claims for relief) are dismissed, and defendants' Rule 11 motion is denied.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

**To the Honorable Sidney H. Stein, United States District Judge:**

Presently before the Court is defendants' motion to dismiss three claims (the sixth, seventh and eighth causes of action) brought under the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961 et seq., in an eight-claim diversity complaint arising out of a series of agreements between plaintiff Dr. Michael Gerstenfeld, a physician with a business degree, and defendant Steven Nitsberg on behalf of defendant Health Capital, Inc. ("HCI"), a company that finances receivables in the health care industry.[1] In addition to moving to dismiss the RICO claims, defendants seek Rule 11 sanctions against counsel for plaintiff Gerstenfeld.

For the reasons set forth below, defendants' motion to dismiss the three RICO claims should be granted because those claims are not pleaded with sufficient particularity to satisfy Fed.R.Civ.P. 9(b), that is, there is no pleading of specific facts giving rise to a strong inference of fraudulent intent. Gerstenfeld, however, is permitted to replead within twenty days of this Report and Recommendation. Because the RICO claims should be dismissed under Rule 9(b), the Court does not reach the question of whether, if properly pleaded under Rule 9(b), they would be sufficient to state a claim under RICO's substantive requirements. Finally, Rule 11 sanctions should be denied, but the Court notes that Rule 11 sanctions remain a distinct possibility if plaintiff Gerstenfeld attempts to re-instate the RICO claims without averring additional facts mandated both by Rule 9(b)'s particularity requirements and RICO's substantive elements. *See Azurite Corp. v. Amster & Co.*, 730 F.Supp. 571, 577 n. 7 (S.D.N.Y.1990) ("An amended complaint which fails to replead [RICO claims] with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed.R.Civ.P. 11.").[2]

### THE COMPLAINT

Since this is a motion to dismiss, the Court accepts for purposes of this motion the well-pleaded allegations of the complaint, and this

---

**1.** The Court has jurisdiction based on the diversity of the parties. It is uncontested that plaintiff is a citizen of Connecticut (Compl. ¶ 1; Ans. ¶ 1) and both defendants are citizens of states other than Connecticut (Compl. ¶¶ 2–3; Ans. ¶¶ 2–3). *See* 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $191,000 (Compl.¶ 118). *See* 28 U.S.C. § 1332(a) (specifying a minimum amount in controversy for diversity jurisdiction of over $75,000).

**2.** Defendants' cover letter accompanying their motion papers requests that the court files in this case be sealed. However, as explained below, dismissing the RICO counts remedies any potential harm to defendants' reputation. Therefore, there is no need to seal the record.

Report and Recommendation summarizes the RICO allegations in the complaint, with minimal resort to the phrase "plaintiff alleges" before each statement. *See, e.g., LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.*, 951 F.Supp. 1071, 1074 (S.D.N.Y.1996) (Knapp, D.J. & Peck, M.J.).

Plaintiff Michael Gerstenfeld is a Connecticut physician who holds an MBA from the University of Connecticut. (Compl.¶¶ 1, 42.) HCI, a Delaware corporation with its principal place of business in New York, "was involved in healthcare and medical financing." (Compl.¶¶ 3, 41.) The precise relationship between HCI and the other defendant, Steven Nitsberg, is unclear, but the complaint refers to HCI as Nitsberg's company (Compl.¶ 40), and alleges that Nitsberg made several misrepresentations on behalf of HCI.

In January 1996, Gerstenfeld and Nitsberg met to discuss "a potential business relationship." (Compl.¶ 39.) Nitsberg appointed Gerstenfeld Vice President of HCI, and caused HCI to send him a letter "reflecting the basic business opportunity." (Compl.¶¶ 45–46.) Complete terms of Gerstenfeld's compensation were "not initially agreed upon." (Compl.¶ 48.) The terms were negotiated in a series of telephone conversations over the next few months. (Compl.¶ 49.) Nitsberg promised in these phone calls that Gerstenfeld would receive compensation, including health insurance, and be paid as soon as HCI had "sufficient cash flow." (Compl.¶¶ 50, 52.) Without specifying any factual basis for the assertion, the complaint alleges that Nitsberg never intended to keep these promises, and that they were made solely to induce Gerstenfeld to expend time and effort on HCI's work. (Compl.¶¶ 51, 54, 57.) Gerstenfeld relied on Nitsberg's promises, expending substantial time, effort and money with the expectation he would be compensated and reimbursed. (Compl.¶¶ 55–57.)

On February 14, 1997, the parties entered into a written agreement, sent through the mail, that Gerstenfeld would receive fifty percent of HCI's fees on any referrals he generated. (Compl.¶¶ 58–59, 62.) Again, the complaint alleges without factual basis that Nitsberg had no intention of honoring the agreement. (Compl.¶ 61.)

One of the HCI projects that Gerstenfeld worked on was the accounts receivable financing of Nassau Radiology, Inc. (Compl.¶ 63.) Prior to August 11, 1997, the parties had numerous interstate telephone conversations in which Nitsberg agreed that Gerstenfeld would be entitled to half the fees generated by the financing of Nassau Radiology's receivables. (Compl.¶ 65.) On August 11, 1997, Nitsberg mailed Gerstenfeld an agreement promising that HCI would pay him half of HCI's fees. (Compl.¶ 64.) Again, the complaint alleges without factual basis that Nitsberg did not intend to comply with that agreement. (Compl.¶ 69.) Gerstenfeld expended substantial efforts to, and did, obtain accounts receivable financing for Nassau Radiology. (Compl.¶¶ 66, 67.) HCI partially paid Gerstenfeld, but the payment was "only to induce [Gerstenfeld] to expend substantial additional efforts." (Compl.¶ 71.)

In interstate telephone calls made during August 1997, Nitsberg promised Gerstenfeld that he would be named Chief Operating Officer of HCI and "would receive substantial additional benefits." (Compl.¶¶ 72, 73.) On September 2, 1997, Nitsberg mailed a letter to Gerstenfeld acknowledging his contribution to HCI. (Compl.¶ 74.) The complaint again alleges, without factual basis, that Nitsberg never intended "the appointment of plaintiff as Chief Operating Officer to be a true appointment" but rather that his communications were intended to induce Gerstenfeld to invest in and expend efforts on HCI's behalf. (Compl.¶¶ 76, 77.)

On September 25, 1997, Nitsberg mailed a "consulting agreement" to Gerstenfeld in connection with a potential financing arrangement between Dynacorp Financial Services, Inc. and Litchfield Financial Corporation. (Compl.¶ 78.) Gerstenfeld made substantial efforts to close the deal, but did not hear anything more from Nitsberg about its progress. (Compl.¶¶ 80–82.) On October 29, 1997, Gerstenfeld wrote to Nitsberg but received no response. (Compl.¶ 83.) Gerstenfeld requested that Dynacorp pay his fifty percent fee directly to him. (Compl.¶ 84.) On January 12,

1998, in an interstate telephone conversation Nitsberg assured Gerstenfeld that he would be paid. (Compl.¶ 85.) Gerstenfeld relied on Nitsberg's representation and "rescinded" his letter demanding payment from Dynacorp directly. (Compl.¶ 86.) Nitsberg and Gerstenfeld entered into an agreement dated January 13, 1998 reflecting their understanding, which Nitsberg sent and Gerstenfeld returned by interstate fax. (Compl.¶ 87.) Once again the complaint alleges without further factual basis that Nitsberg did not intend to comply with his promises. (Compl.¶ 88.) Nitsberg never informed Gerstenfeld when the Dynacorp deal was closed, and alleged that Gerstenfeld breached their agreement by demanding payment. (Compl.¶¶ 89–92.)

The complaint also alleges, on information and belief, that Nitsberg made promises to other unknown individuals by telephone and mail that he did not intend to keep, to induce them to expend efforts for HCI. (Compl.¶¶ 95–99.) Finally, HCI retains a notebook computer belonging to Gerstenfeld "based upon the fraudulent allegation that the notebook contains trade secrets which can not be deleted." (Compl. ¶ 93; *see also* Compl. ¶ 28.)

The complaint alleges that Nitsberg's conduct "constitutes the conducting of an enterprise Health Capital, Inc. through a pattern of racketeering in violation of 18 U.S.C. § 1962(c)," and that the "pattern of racketeering consisted of multiple acts of wire fraud in violation of 18 U.S.C. § 1343 and mail fraud in violation of 18 U.S.C. § 1341." (Compl.¶¶ 101, 102.) The complaint alleges that Nitsberg used the proceeds of the pattern of racketeering to invest in Health Capital LLC and Health Care Management LLC. (Compl.¶¶ 106–07, 113–14.)

### ANALYSIS

Defendants contend that the complaint's RICO fraud allegations were not pleaded with sufficient particularity (Defs.Br. at 2), that the facts alleged do not amount to a RICO violation (*id.*), and that Gerstenfeld has no standing to assert damages based on

Nitsberg's investments in the other entities (*id.* at 8–9).

### I. PLEADING REQUIREMENTS FOR CIVIL RICO CLAIMS SOUNDING IN FRAUD

Rule 9(b) of the Federal Rules of Civil Procedure sets forth special pleading requirements for fraud claims:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

 Although Rule 9(b) must be read together with Rule 8(a), which requires only a "short and plain statement of the claim," fraud allegations in a complaint must be specific enough to allow the defendant a reasonable opportunity to answer the complaint. *Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990); *see also, e.g., DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987); *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F.Supp. 1071, 1081–82 (S.D.N.Y.1996) (Knapp, D.J. & Peck, M.J.); *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 225 (S.D.N.Y.1989) ("Rule 9(b) is designed to provide a defendant with fair notice of a plaintiff's claim in order to enable a defendant to prepare a defense...."); Douglas E. Abrams, *The Law of Civil RICO* at 336 (Little, Brown & Co.1991 & Supp. 1999). Furthermore, the complaint must give the defendant "adequate information" to allow the defendant "to frame a response." *O'Brien v. National Property Analysts Partners,* 719 F.Supp. at 225; *accord, e.g., LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F.Supp. at 1081.

 Rule 9(b) also applies to civil "RICO claims for which fraud is the predicate illegal act." *Moore v. PaineWebber, Inc.,* 189 F.3d 165, 172–73 (2d Cir.1999); *accord, e.g., S.Q.K.F.C. Inc. v. Bell Atlantic Tricon Leasing Corp.,* 84 F.3d 629, 634, 636 (2d Cir.1996) (dismissing RICO claims for failure to plead fraud with particularity as required by Fed. R.Civ.P. 9(b)); *McLaughlin v. Anderson,* 962 F.2d 187, 190–91 (2d Cir.1992); *Salzmann v.*

*Prudential Sec., Inc.,* 91 Civ. 4253, 1994 WL 191855 at *12 (S.D.N.Y. May 16, 1994); Jed S. Rakoff & Howard W. Goldstein, *RICO Civil and Criminal Law and Strategy* § 7.04(1)(c) at 7–27 (Law Journal Press 1999) ("Courts have uniformly held that Rule 9(b) applies to predicate acts of fraud in a RICO claim."); Douglas E. Abrams, *The Law of Civil RICO* § 6.1.3 at 338–39.

As the Second Circuit recently explained:

In the RICO context, Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. The plaintiffs must also identify the purpose of the mailing within the defendant's fraudulent scheme. *In addition, the plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.*

*Moore v. PaineWebber, Inc.,* 189 F.3d at 173 (internal quotations & citations omitted, emphasis added); *see also, e.g., O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991) ("[W]hile Rule 9(b) permits scienter to be demonstrated by inference, this 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.' "); *Ouaknine v. MacFarlane,* 897 F.2d at 79–80 (pleadings must include time, place and speaker of alleged misrepresentation, as well as "some factual basis for conclusory allegations of intent[,]" including allegations giving rise to a " 'strong inference' of fraudulent intent"); *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d at 1247; *Schmidt v. Fleet Bank,* 96 Civ. 5030, 1998 WL 47827 at *6–7 (S.D.N.Y. Feb. 4, 1998) (dismissing complaint against banks alleged to have participated in a Ponzi scheme where plaintiff failed to aver facts giving rise to a strong inference of fraudulent intent); *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F.Supp. at 1081–82; *Rotter v. Institutional Brokerage Corp.,* 93 Civ. 3578, 1994 WL 389083 at *3 (S.D.N.Y. July 22, 1994) ("[A]llegations regarding the defendant's state of mind cannot be mere speculation or conclusory statements."); *Amalgamated Bank v. Marsh,* 823 F.Supp. 209, 216–17 (S.D.N.Y. 1993) (complaint must include minimum factual basis for allegations of scienter); *Metro Furniture Rental, Inc. v. Alessi,* 770 F.Supp. 198, 201 (S.D.N.Y.1991).

■ This "strong inference of fraudulent intent" can be shown in one of two ways: either by "alleging 'facts showing a motive for committing fraud and a clear opportunity for doing so,' " or by " 'identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater.' " *D'Orange v. Feely,* 877 F.Supp. 152, 159 (S.D.N.Y.1995) (quoting *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987)); *accord, e.g., Powers v. British Vita, P.L.C.,* 57 F.3d 176, 184 (2d Cir.1995); *Skylon Corp. v. Guilford Mills, Inc.,* 93 Civ. 5581, 1997 WL 88894 at *3 (S.D.N.Y. March 3, 1997); *Sheridan v. Jaffe,* 94 Civ. 9344, 1996 WL 345965 at *7 (S.D.N.Y. June 24, 1996) (Peck, M.J.); *Telemedia Partners Worldwide Ltd. v. Hamelin Ltd.,* 95 Civ. 2452, 1996 WL 41818 at *9 (S.D.N.Y. Feb. 2, 1996); *Polycast Tech. Corp. v. Uniroyal, Inc.,* 728 F.Supp. 926, 935 (S.D.N.Y.1989) (showing of motive and opportunity to commit fraud can establish a strong inference of scienter); Douglas E. Abrams, *The Law of Civil RICO* § 6.1.3 at 347.

■ The purpose of Rule 9(b)'s heightened pleading requirements is threefold: (1) to enable the defendant to defend himself through adequate notice of the claims; (2) to protect the defendant's reputation from pending charges that are without any particularized basis; and (3) to derail "strike suits" in which the threat of RICO liability is used to increase leverage in settlement negotiations in business disputes unrelated to racketeering. *O'Brien v. National Property Analysts Partners,* 936 F.2d at 676; *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Stern v. Leucadia Nat'l Corp.,* 844 F.2d 997, 1003 (2d Cir.1988), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988); *DiVittorio v. Equidyne Extractive Indus., Inc.,*

822 F.2d at 1247.[3] Courts in the Second Circuit "rigorously enforce these salutary purposes of Rule 9(b)." *Ross v. Bolton,* 904 F.2d at 823; *accord, e.g., Aquilio v. Manaker,* Nos. 90–CV–45, 91–CV–93, 1992 WL 144303 at *2 (N.D.N.Y.1992).

## II. *GERSTENFELD'S COMPLAINT DOES NOT MEET THE RICO RULE 9(B) FRAUD PLEADING REQUIREMENTS*

■ Gerstenfeld's complaint essentially alleges a claim for breach of a contract or series of contracts between Gerstenfeld and HCI. (*See* Compl. ¶¶ 10–36.) The RICO claims are based on the theory that mail and wire fraud was committed when Nitsberg, on behalf of HCI, entered into the agreements with no intent to perform HCI's part of the bargain. (*See* Compl. ¶¶ 51, 54, 57, 61, 69, 77, 88, 98.) In order to sustain the fraud claims, however, Gerstenfeld must point to specific facts giving rise to a "strong inference of fraudulent intent." *Moore v. Paine-Webber, Inc.,* 189 F.3d 165, 173 (2d Cir.1999).

The complaint appears to allege six acts of fraud that could conceivably serve as predicates to RICO liability, including: (1) interstate telephone conversations from January 1996 to February 14, 1997 (Compl ¶¶ 39, 49–57); (2) the ongoing fee agreement of February 14, 1997 (Compl.¶¶ 58–62); (3) the Nassau Radiology fee agreement (Compl.¶¶ 63–71); (4) the Dynacorp Consulting Agreement (Compl.¶¶ 78–92); (5) the retained notebook computer (Compl.¶¶ 93–94); and (6) promises made to other unspecified victims (Compl.¶¶ 95–99). None of these acts meets the Rule 9(b) requirement that the plaintiff "allege facts that give rise to a strong inference of fraudulent intent." *Moore v. Painewebber Inc.,* 189 F.3d at 173; *accord, e.g., S.Q.K.F.C. Inc. v. Bell Atlantic Tricon Leasing Corp.,* 84 F.3d 629, 634 (2d Cir.1996); *Powers v. British Vita P.L.C.,* 57 F.3d 176, 184 (2d Cir.1995); *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir. 1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct.

698, 98 L.Ed.2d 650 (1988); *Mayfield v. General Electric Capital Corp.,* 97 Civ. 2786, 1999 WL 182586 at *9–10 (S.D.N.Y. March 31, 1999). Gerstenfeld fails to point to any facts that indicate Nitsberg did not intend to keep his promises. There is no particular opportunity and motive to commit fraud under these circumstances—if Gerstenfeld really were bringing in business, Nitsberg would have profited more by compensating him as agreed so that he would continue expending efforts on HCI's behalf than by risking criminal charges and losing a valuable "finder" by intentionally defrauding him. Moreover, Gerstenfeld points to no circumstances that show Nitsberg consciously set out to defraud him. In short, the complaint contains no allegations that distinguish this case from a typical contract dispute. "[M]ere failure of promised performance has never permitted a factual finding that defendants never intended to perform." *Soper v. Simmons Int'l Ltd.,* 632 F.Supp. 244, 249 (S.D.N.Y.1986) (dismissing complaint where plaintiffs allege false promises without averring specific facts showing defendants never intended to pay a commission); *see also, e.g., Powers v. British Vita, P.L.C.,* 57 F.3d at 185 ("[t]he mere nonperformance of promises is insufficient to create an inference of fraudulent intent"); *United States v. D'Amato,* 39 F.3d 1249, 1261 n. 8 (2d Cir.1994) ("A breach of contract does not amount to mail fraud. . . . To infer fraudulent intent from mere non-performance, therefore, would eviscerate the distinction between a breach of contract and fraud."); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993) ("Contractual breach, in and of itself, does not bespeak fraud. . . ."); *Bernstein v. Misk,* 948 F.Supp. 228, 238 (E.D.N.Y.1997) ("The defendants correctly assert that the fact that [defendants] intended to default on an obligation cannot transform what otherwise looks like a breach of contract claim into a fraud claim").

The purposes of Rule 9(b) are well served by dismissal of Gerstenfeld's allegations.

---

**3.** *See also, e.g., Mayfield v. General Electric Capital Corp.,* 97 Civ. 2786, 1999 WL 182586 at *9 (S.D.N.Y. March 31, 1999); *D'Orange v. Feely,* 877 F.Supp. at 158; *Financial Matters, Inc. v. Pepsico, Inc.,* 92 Civ. 7497, 1993 WL 378844 (S.D.N.Y. Sept. 24, 1993); *Amalgamated Bank v.*

*Marsh,* 823 F.Supp. at 216; *Reingold v. Deloitte Haskins & Sells,* 599 F.Supp. 1241, 1266 (S.D.N.Y.1984); Douglas E. Abrams, *The Law of Civil RICO* § 6.1.3 at 336–38. Jed S. Rakoff & Howard W. Goldstein, *RICO Civil and Criminal Law and Strategy* § 7.04(1)(c) at 7–27.

*See* cases cited page 132 above. The vagueness of the intent assertions in the complaint makes them impossible to respond to; the complaint appears to inflate a typical employment contract claim into a racketeering allegation that could unfairly sully the defendant's reputation; and finally, appending the RICO claims may be a mere tactical "strike suit" position to force a higher settlement than could be reached on the contract claims alone.

Therefore, the RICO claims contained in the sixth, seventh and eighth causes of action should be dismissed with leave to replead within twenty days from the date of this Report and Recommendation because they fail to comply with Rule 9(b)'s fraud pleading requirements.

The Court notes, however, that if Gerstenfeld chooses to amend and reassert his RICO claims, he would be well advised to be as specific as possible about the number of telephone calls and the dates on which they occurred. *See, e.g., Qantel Corp. v. Niemuller,* 771 F.Supp. 1361, 1369 (S.D.N.Y.1991) (dismissing, without prejudice, RICO complaint based on wire fraud for failure to identify the actual number of phone calls and precise dates on which they were made); *accord, e.g., Bernstein v. Misk,* 948 F.Supp. at 239; *Diaz v. Century Pacific Inv. Corp.,* No. CV 91–1329, 1991 WL 331372 at *2 (C.D.Cal. Dec.16, 1991); *In re Bennett,* 142 B.R. 616, 623 (Bankr.N.D.N.Y.1992).

Furthermore, Gerstenfeld would be required to plead facts indicating that Nitsberg's "racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989);[4] *see also, e.g., United States v. Indelicato,* 865 F.2d 1370, 1381–84 (2d Cir.) (en banc) (providing detailed description of RICO requirements and concluding that "evidence of the

nature of the enterprise may be used to establish the threat of continuity sufficient to show a RICO pattern"), *cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989); *Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F.Supp. 579, 584–85 (S.D.N.Y.1989) (no threat of continuity where complaint alleged only "a closed-ended, single scheme involving three perpetrators (a company and two of its directors), one victim, and an uncomplicated transaction (essentially relating to a simple breach of contract)[,]" occurring over a 13 month period).

In addition, if Gerstenfeld chooses to replead the seventh and eighth causes of action, he must aver facts indicating his injuries from Nitsberg's investments of racketeering income in Health Capital, LLC and Health Capital Management, LLC. *See., e.g., Ouaknine v. MacFarlane,* 897 F.2d 75, 83 (2d Cir.1990); *Dietrich v. Bauer,* 95 Civ. 7051, 1999 WL 126438 at *29 (S.D.N.Y. March 10, 1999) (dismissing complaint for failing to allege injuries arising out of investment of proceeds of illegal acts, rather than from acts themselves); *Sheridan v. Jaffe,* 94 Civ. 9344, 1996 WL 345965 at *4 (S.D.N.Y. June 24, 1996) (Peck, M.J.).

### III. *THE COURT DENIES THE RULE 11 SANCTIONS MOTION*

■ Finally, the Court denies the Rule 11 sanctions motion, principally because defendants' brief nowhere addresses the applicable Rule 11 standards. In a waste of the Court's time (and a waste of paper), defendants' Rule 11 motion papers merely repeat, virtually verbatim, their motion to dismiss papers. The Court, however, warns plaintiff Gerstenfeld and his counsel that any further efforts to convert a breach of contract or employment agreement dispute into racketeering charges will be grounds for sanctions if plaintiff attempts to re-assert RICO claims with-

---

**4.** A RICO claim requires proving "a pattern of racketeering activity" (18 U.S.C. §§ 1962, 1964) which must include no fewer than "two acts of racketeering activity" within a ten year period (18 U.S.C. § 1961(5)). Since violations of the mail and wire fraud statutes (*see* 18 U.S.C. § 1961(1)) are the only "racketeering activity" Gerstenfeld alleges, he will have to plead ade-

quately and prove at least two underlying acts of fraud. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. at 237–39, 109 S.Ct. at 2899–2900; *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985) (two predicate acts are necessary but may not be sufficient for RICO liability).

**134**

out satisfying Fed.R.Civ.P. 9(b) and RICO's substantive elements, as discussed above. *See, e.g., Azurite Corp. v. Amster & Co.,* 730 F.Supp. 571, 577 n. 7 (S.D.N.Y.1990); Douglas E. Abrams, *The Law of Civil RICO* § 6.13 at 347–48 (quoting *Azurite* ).

### CONCLUSION

The Court should dismiss plaintiff Gerstenfeld's RICO claims (the sixth, seventh and eighth causes of action), but deny defendants' Rule 11 sanctions motion. Plaintiff Gerstenfeld has twenty days from this Report and Recommendation to replead, if he wishes to do so and can do so in compliance with Rule 9(b) and other RICO requirements.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Sidney H. Stein, 500 Pearl Street, Room 1010, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Stein. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).