**THAI AIRWAYS INTERNATIONAL LTD., Plaintiff,**

v.

**UNITED AVIATION LEASING B.V., United Aviation Services, Inc., Safwan Kuzbari, Chafic Kuzbari, Maher A. Kuzbari, and John Does 1–10, Defendants.**

**No. 93 Civ. 0154 (MBM).**

United States District Court, S.D. New York.

Feb. 7, 1994.

---

Robert B. Davidson, Baker & McKenzie, New York City, for plaintiff.

Robert Layton, Daniel J. Brooks, Layton Brooks & Hecht, New York City, for defendants United Aviation Leasing B.V. and United Aviation Services, Inc.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Thai Airways International Ltd. brings this action under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and the laws of New York State. Defendants United Aviation Leasing B.V. ("UAL") and United Aviation Services, Inc. ("UAS"), the only defendants that have been served, have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6),

lack of subject matter jurisdiction, Fed. R.Civ.P. 12(b)(1), and failure to plead fraud with sufficient particularity, Fed.R.Civ.P. 9(b). Because the complaint fails to state a claim under RICO, in part because of insufficient allegations of fraud, the RICO claims are dismissed pursuant to Rule 12(b)(6). Further, because this court's pendent jurisdiction over the state-law claims depends upon its federal question jurisdiction over the RICO claims, *see* 28 U.S.C. § 1367(a), the state-law claims are dismissed pursuant to Rule 12(b)(1).

## I.

All the parties before the court are foreign entities. The allegations in the complaint are taken as true for current purposes. Thai Airways is a Thai corporation with its principal place of business in Bangkok, Thailand. (Complt ¶ 1) UAL is a Dutch corporation with its principal place of business in Switzerland, and UAL's parent corporation, UAS, is a Panamanian corporation with its principal place of business in Switzerland. (Def.Mem. at 1–2) In addition, the named individual defendants are all alleged to be Syrian citizens residing in Switzerland. (Complt ¶¶ 4–6)

This action arises from a business transaction involving UAS and UAL (collectively, "United Aviation") and Thai Airways. Relevant parts of the transaction, as alleged by Thai Airways, begin in January 1989, when Thai Airways entered into two aircraft lease agreements with UAL. (Complt ¶ 12) The lease agreements obligated Thai Airways to pay UAL an $800,000 security deposit for each of the two aircraft, to be refunded upon termination of the lease. (Complt ¶ 13) In March 1989, UAS executed two agreements in which it guaranteed UAL's obligations under the lease agreements, including its obligations to refund the security deposits. (Complt ¶ 16)

In early 1989, Thai Airways wired $1.6 million in various installments to a UAL bank account in New York. (Complt ¶ 18) Upon receipt of the security deposits, UAL transferred the funds to Switzerland, commingled them with UAL's general operating funds, and disbursed them through foreign commerce to UAS affiliates and to Safwan Kuzbari, Chafic Kuzbari, and Maher A. Kuzbari (collectively, the "Kuzbaris"), who are officers of UAS and UAL. (Complt ¶ 19) Since May 1992, UAS has continued to transfer its assets through foreign commerce, in part to avoid repaying Thai Airways its security deposit. (Complt ¶¶ 29, 33)

In anticipation of the termination of the lease agreements, Thai Airways by letter dated January 27, 1992 demanded that UAL return its security deposits. (Complt ¶ 23) UAL responded that severe losses had depleted the cash reserves of the "UAS Group," and consequently UAL would not be able to return the security deposits upon the expiration of the lease agreements. (Complt ¶ 24)

Thai Airways' initial attempts to collect on the UAS guarantee were addressed mistakenly to a Delaware corporation affiliated with UAS ("UAS–Delaware") with the same name as UAS, "United Aviation Services, Inc." (Complt ¶¶ 26–27) Although Thai Airways does not explicitly say so, its confusion between UAS and UAS–Delaware may have stemmed, at least in part, from an opinion of counsel that UAL delivered around the time the lease agreements were executed. This opinion stated that "United Aviation Services, Inc." is a Panamanian corporation. However, the lease agreements provide that copies of notices to UAL were to be sent to "United Aviation Services, Inc." in Uniondale, New York. (Complt ¶ 17) Apparently because UAS–Delaware is located in Uniondale and has the same name as UAS, Thai Airways concluded that UAS–Delaware was the same entity as UAS. Because of Thai Airways' confusion, when UAS–Delaware went into bankruptcy, Thai Airways mistakenly believed that UAS had gone into bankruptcy and, as a result, Thai Airways "did not institute suit against UAS[ ] and, instead, continued collection efforts only against UAL." (Complt ¶ 29) At no time did the Kuzbaris, UAL, UAS, UAS–Delaware, or any other UAS affiliate inform Thai Airways that

UAS–Delaware was different from UAS. (Complt ¶¶ 28, 32)

## II.

RICO provides a civil remedy to any person "injured in his business or property" by another person's defined participation in an enterprise through a "pattern of racketeering activity." 18 U.S.C. § 1962, 1964(c).[1] Under RICO, "racketeering activity" includes acts indictable under 18 U.S.C. § 1341 (mail fraud),[2] 18 U.S.C. § 1343 (wire fraud),[3] and 18 U.S.C. § 2314 (transportation of converted money).[4] 18 U.S.C. 1961(1)(B). A pattern of racketeering activity requires the commission within a ten-year period of two such predicate acts. 18 U.S.C. § 1961(5). However, this is a minimum requirement. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 236–37, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985)). In addition, a pattern requires that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* 492 U.S. at 238–39, 109 S.Ct. at 2900 (emphasis in original). At the pleading stage, if the threat of continuing racketeering activity is inferable from the complaint, then whether "defendants' actions are continuing in nature or isolated or sporadic will be the subject of proof at trial." *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 18 (2d Cir.1989), cert. denied, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990).

On a motion to dismiss a RICO claim, the court must consider the facts in the light most favorable to the plaintiff, and may dismiss the case only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc.*, 492 U.S. at 249–50, 109 S.Ct. at 2906 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). Such consideration is "limited to facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken." *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993).

Thai Airways alleges that various actions of the defendants related to the transactions

---

1. More precisely, RICO prohibits investing the proceeds from a pattern of racketeering activity in an enterprise whose activities implicate interstate or foreign commerce, *see* 18 U.S.C. § 1962(a), acquiring or maintaining through a pattern of racketeering activity an interest in or control over such an enterprise, *see id.* § 1962(b), conducting or participating in the conduct of such an enterprise's affairs through a pattern of racketeering activity, *see id.* § 1962(c), and conspiring to engage in any of these prohibited activities, *see id.* § 1962(d).

2. This section provides, in relevant part:

   Whoever, having devised or intending to devise any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than

$1,000 or imprisoned not more than five years, or both....

3. This section provides, in relevant part:

   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both....

4. This section provides, in relevant part:

   Whoever transports, transmits, or transfers in interstate or foreign commerce any ... money, of the value of $5,000 or more knowing the same to have been stolen, converted or taken by fraud ...

   *    *    *    *    *    *

   Shall be fined not more than $10,000 or imprisoned not more than 10 years, or both.

described above constitute a "pattern of racketeering activity" within the meaning of RICO. First, it alleges that UAL's commingling of its security deposits in Switzerland constituted conversion under New York law, and that UAL's disbursement of the funds through foreign commerce therefore amounted to transportation of converted money in violation of 18 U.S.C. § 2314. (Complt ¶¶ 19–20, 35) Second, Thai Airways alleges that the defendants obtained the two security deposits by means of a fraudulent scheme utilizing the mails and wires of the United States. (Complt ¶ 35, 38) Third, Thai Airways alleges that the defendants conspired to violate RICO. (Complt ¶¶ 34, 44)

### III.

■ United Aviation contends that this court lacks subject matter jurisdiction over this action, arguing that RICO does not apply to conduct outside the United States. There is no need here to measure the extraterritorial reach of RICO, however, because the complaint alleges that racketeering activities occurred in the United States. Thai Airways expressly alleges that "defendants have conducted their fraudulent scheme and their racketeering enterprise through the use of the U.S. wires and mail, including the sending or receipt of ... communications from or to the United States." (Complt ¶ 38) In particular, Thai Airways alleges that the defendants used the United States wires to transfer the security deposits into UAL's New York bank account and that "[a]ll correspondence related to the negotiation and execution of the Lease Agreements and the Guarantee Agreements" was sent or received via the United States wires or mails. (Complt ¶ 38) Thai Airways also alleges that specified letters in which Thai Airways or its counsel demanded the return of its security deposits from UAL were sent or received by United States mail. (Complt ¶ 38) However, letters to UAL from Thai Airways or its counsel that merely demanded the return of the security deposit did not further the defendants' alleged scheme, and therefore do not fall within the mail fraud statute. *See*

*United States v. LaFerriere,* 546 F.2d 182, 184–87 (5th Cir.1977).

In addition, the alleged violations of 18 U.S.C. § 2314 can be traced to UAL's alleged wire transfer of the security deposits from a New York bank account to a Swiss bank account, where the security deposits allegedly were commingled with UAL's general funds. This wire transfer was not merely a preparatory act, but rather was an integral part of the alleged conversion. Further, the transfer necessarily involved conduct in the United States for which the principal causing it may be held criminally liable. *See* 18 U.S.C. § 2(b). Accordingly, Thai Airways has alleged sufficient conduct within the United States to provide this court with subject matter jurisdiction over any properly pleaded RICO claims. However, as discussed next, Thai Airways has failed to state a claim under RICO.

### IV.

#### A. *Mail and Wire Fraud Allegations*

■ RICO claims sounding in fraud must satisfy Federal Rule of Civil Procedure 9(b). *See, e.g., DiVittorio v. Equidyne Extractive Indus.,* 822 F.2d 1242, 1247 (2d Cir. 1987); *Sable v. Southmark/Envicon Capital Corp.,* 819 F.Supp. 324, 341 (S.D.N.Y.1993). In order to plead fraud with particularity, "a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). Such allegations cannot be conclusory, but must be supported by assertions of fact. *See Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986). Thai Airways' allegations of mail fraud and wire fraud neither identify any particular communications in which the allegedly fraudulent statements were made nor specify the contents of any allegedly fraudulent statements. To the extent the opinion of counsel that apparently misled Thai Airways about the separateness

of UAS and UAS–Delaware could be considered fraudulent, there is no allegation that Thai Airways suffered any legally cognizable harm from its confusion between the two entities. Moreover, Thai Airways has not alleged any facts giving rise to a strong inference that the defendants acted with the required fraudulent intent. *See Atlantic Gypsum Co. v. Lloyds Int'l Corp.,* 753 F.Supp. 505, 507 (S.D.N.Y.1990). In sum, Thai Airways' allegations of predicate acts involving fraud fall far short of the requirements of Rule 9(b).

## B. *Allegations of Continuing Criminal Activity*

■ RICO claims also must "allege facts showing a threat of continuing racketeering activity." *Passini v. Falke–Gruppe,* 745 F.Supp. 991, 993 (S.D.N.Y.1990). Such facts must support an inference that "the acts of racketeering activity were neither isolated nor sporadic." *Dymm v. Cahill,* 730 F.Supp. 1245, 1261 (S.D.N.Y.1990) (citing *Beauford v. Helmsley,* 865 F.2d 1386, 1391–92 (2d Cir.) (en banc), *vacated,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584, *adhered to upon further consideration,* 893 F.2d 1433 (2d Cir.), *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989)). Thus, courts have found that "there is insufficient threat of continuity to support a RICO cause of action where the racketeering acts involved a brief period of time, relatively few criminal acts, an uncomplicated scheme, few participants, and few victims." *Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F.Supp. 579, 584 (S.D.N.Y.1989) (citations omitted).

In this action, Thai Airways has made only the following factually barren allegation of continuity: "Upon information and belief, the [alleged] racketeering activity ... is continuing by reason of the continuing transport and concealment of Thai Airways's funds" and "the UAS Group conducts its usual business by engaging in the [alleged racketeering activities], and has converted and will continue to convert funds of other lessees of airplanes who pay downpayments or security deposits to a member of the UAS Group." (Com-

plaint ¶ 37) While Thai Airways argues that these generalized allegations made upon information and belief are sufficient, it undercuts this argument by attempting to have this court improperly consider facts not incorporated in the complaint. *See Allen v. West Point–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991).

Even if it were proper to look beyond the complaint to decide this motion, the additional facts proffered by Thai Airways fail to support any inference of criminal activity. The bulk of the supplemental materials filed by Thai Airways are unexceptional legal documents relating to the bankruptcy of certain U.S. affiliates of UAS. Significantly, these materials do not show that any other lessee has had its security deposit converted by any of the defendants. Moreover, Thai Airway's own description of their contents reveals that they contain only unremarkable facts—essentially, that UAS and its affiliates, including the bankrupt U.S. affiliates, continue to engage in the business of leasing aircraft (Pltf.Opp.Mem. at 19–20), and that certain control and financial relationships among the Kuzbaris, UAS, and affiliates of UAS indicate they "are all linked in a common enterprise aimed at pooling revenues and expenses in furtherance of the UAS Group's leasing business." (Pltf.Opp.Mem. at 20–25) Thai Airways contends, in the most generalized fashion, that the activities of the defendants documented in the supplemental materials are illegal. But Thai Airways specifies no actions that appear to be criminal, and I detect nothing in these materials that shows criminal activities.

Finally, even if Thai Airways were to plead facts that support its allegation that the defendants are continuing to conceal and transport the already converted security deposits of Thai Airways, such activities do not constitute continuing criminal conduct. The defendants' alleged scheme to defraud Thai Airways was essentially accomplished upon the commingling of the security deposits with UAL's general funds. *Cf. USA Network v. Jones Intercable, Inc.,* 729 F.Supp. 304, 318 (S.D.N.Y.1990) (scheme to fraudulently mis-

lead contract party about intentions to terminate contract "essentially accomplished" upon termination, and subsequent efforts to conceal fraud did not constitute "continuing criminal activity"). Any continuing concealment or transfer of the security deposits would not cause any additional harm to Thai Airways and would not enlarge the scope of the isolated alleged fraud. Because the alleged concealment and transfer constitute, at most, additional "actions ... narrowly directed toward a single allegedly fraudulent goal," *Continental Realty Corp. v. J.C. Penney Co.*, 729 F.Supp. 1452, 1455 (S.D.N.Y.1990), they would not constitute continuing criminal activity even if properly pleaded.

\* \* \*

For the foregoing reasons, Thai Airways has failed to state a RICO claim and, as a result, this court lacks subject matter jurisdiction over Thai Airway's pendent state-law claims. Accordingly, the complaint is dismissed in its entirety against the moving defendants. A conference will be scheduled to determine whether plaintiff can allege sufficient facts to warrant leave to replead.

SO ORDERED.