THAI AIRWAYS INTERNATIONAL LTD., Plaintiff,

v.

UNITED AVIATION LEASING B.V., United Aviation Services, Inc., Safwan Kuzbari, Chafic Kuzbari, Maher A. Kuzbari, and John Does 1–10, Defendants.

No. 93 Civ. 0154 (MBM).

United States District Court,
S.D. New York.

Nov. 30, 1994.

Robert B. Davidson, Baker & McKenzie, New York City, for plaintiff.

Robert Layton, Daniel J. Brooks, Layton, Brooks & Hecht, New York City, for defendants United Aviation Leasing B.V. and United Aviation Services, Inc.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Thai Airways International, Ltd. sues defendants United Aviation Leasing B.V. and others under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and state law. Plaintiff alleges that defendants unlawfully converted security deposits proffered under airplane lease agreements, in violation of 18 U.S.C. § 2314, and committed wire fraud, in violation of 18 U.S.C. § 1343, when they caused plaintiff to transmit these security deposits. In a previous opinion, familiarity with which is assumed, this court granted defendants' motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), and failure to plead fraud with particularity, as required by Fed.R.Civ.P. 9(b). *Thai Airways Int'l Ltd. v. United Aviation Leasing B.V.*, 842 F.Supp. 1567 (S.D.N.Y.1994). Following a conference held on March 21, 1994, plaintiff was granted leave to replead. Defendants now move to dismiss plaintiff's amended complaint. Because plaintiff failed to correct the infirmities afflicting the original RICO claim, and because there is no other basis for federal jurisdiction, defendants' motion is granted, and the amended complaint is dismissed.

### I.

Defendants United Aviation Leasing B.V. ("UAL") and its parent corporation, United Aviation Services ("UAS"), are in the business of leasing aircraft to commercial airlines. (AC ¶ 12) In January 1989, plaintiff Thai Airways entered into two lease agreements with UAL. (*Id.*) The lease agreements, which are governed by New York law, obligated plaintiff to pay UAL an $800,000 security deposit for each aircraft, to be re-funded upon termination of the lease. (AC ¶¶ 13, 15) In early 1989, Thai airways wired $1.6 million to a UAL bank account in New York. (AC ¶ 19) Thereafter, UAL allegedly transferred the security deposit to Switzerland, where it was commingled with funds received from other UAS group companies. (AC ¶ 20) When plaintiff demanded the return of its security deposit at the termination of the lease, the airline was informed that "UAS group" cash reserves were depleted, and consequently, defendants were unable to return the deposits. (AC ¶ 27)

In its original complaint, plaintiff alleged that by commingling the security deposits, defendants converted trust funds in violation of N.Y.Gen.Oblig.L. § 7–101, and by disbursing these funds through foreign commerce, defendants transported converted money in violation of 18 U.S.C. § 2314. (Compl. ¶¶ 19–20, 35) Plaintiff further alleges that defendants obtained the two security deposits by means of a fraudulent scheme involving the wires of the United States, in violation of 18 U.S.C. § 1343. (Compl. ¶¶ 35, 38) Plaintiff unsuccessfully attempted to plead a RICO claim based on predicate acts of transportation of converted money and wire fraud. (Compl. ¶¶ 35, 39–46) This court concluded that the allegation of wire fraud did not satisfy the particularity requirements of Fed. R.Civ.P. 9(b) because plaintiff failed to identify specific communications and detail the contents of allegedly fraudulent statements, and plaintiff failed to plead facts giving rise to a strong inference of scienter. *Thai Airways*, 842 F.Supp. at 1571–72. Furthermore, the court found the alleged threat of continuity was insufficient to support a RICO claim. *Id.* at 1572. In the original complaint, plaintiff made the unsupported allegation that racketeering activity persisted because Thai Airways' funds continued to be transported, defendants conducted their usual course of business by engaging in racketeering activities, and defendants continue to convert funds of other lessees who give security deposits to UAS entities. *Id.* Plaintiff impermissibly attempted to bolster these generalized allegations with supplemental materials not contained in the complaint which the court found were neither proper to consider

in a motion to dismiss, nor helpful to the claim of continuity. *Id.* Consequently, plaintiff failed to state a RICO claim, and the complaint was dismissed.

In the amended complaint, plaintiff seeks to rectify the problems identified in its original RICO allegation by particularizing the wire fraud claim, and adding new charges that defendants systematically defrauded lessees as part of their normal method of conducting business. Although plaintiff has now managed to plead wire fraud with particularity, the conversion claim involving other unnamed lessees fails to satisfy the strictures of Rule 9(b). The remaining predicate acts, which qualify under Rule 9(b), cannot support the inference of continuing racketeering activity required for a viable RICO claim. Accordingly, the amended complaint is dismissed, without leave to replead.

## II.

■ Plaintiff alleges that defendants violated §§ 1962(a)–(d) of RICO. (AC ¶¶ 44–47) To state a civil RICO claim, plaintiff must establish that (1) the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce. *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). A pattern of racketeering activity requires the commission of at least two predicate acts during a ten-year period in violation of the laws enumerated in 18 U.S.C. § 1961(1). 18 U.S.C. § 1961(5).

Plaintiff alleges the pattern of racketeering activity consisted of at least two acts of wire fraud, when defendants caused plaintiff to transfer its security deposits to UAL (AC ¶ 39), and violations of 18 U.S.C. § 2314, involving the transport of converted funds in foreign commerce, when UAL commingled Thai Airways' security deposits with general UAS funds, and then transported and disbursed these converted funds in foreign commerce. (AC ¶¶ 20–22) Plaintiff claims that continued violations of § 2314, involving the security deposits of other lessees, constitute

predicate acts that are also part of the pattern of racketeering. Specifically, plaintiff alleges that defendants lease aircraft to other commercial carriers; the lessees enter into lease agreements which require them to pay security deposits; the hypothetical lease agreements are governed by New York law which considers these deposits to be funds held in trust; and defendants commingled these trust funds with general UAS accounts in violation of N.Y.Gen.Obl.L. § 7–101. (AC ¶¶ 12–18, 23) Plaintiff posits that the continuity requirement is satisfied by the repeated transport and concealment of Thai Airways' funds, and the funds of other unnamed lessees. (AC ¶ 41)

■ Allegations of predicate acts based on fraud must satisfy the pleading requirements of Rule 9(b) in order to be considered part of a RICO pattern. *CNBC, Inc. v. Alvarado,* 93 Civ. 2261, 1994 WL 445717, at *2 (S.D.N.Y. Aug. 17, 1994); *Update Traffic Systems, Inc. v. Gould,* 857 F.Supp. 274, 281 (E.D.N.Y.1994). Rule 9(b) provides, in part, that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." To specify fraud with particularity, the complaint must detail the "time, place, speaker, and sometimes even the content of the alleged misrepresentation." *Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990). Plaintiff's repleaded wire fraud allegation meets the requirements of Rule 9(b), for in contrast to the initial pleading (Compl. ¶ 38(a)), plaintiff identified the precise dates of the wire transfers, the amounts transmitted, and the exact destination of those transmissions (AC ¶ 39).

■ In addition to particularizing the fraud allegation, plaintiff must chronicle factual circumstances giving rise to a "strong inference" that defendants possessed the predicate fraudulent intent. *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990); *Cosmas v. Hassett,* 886 F.2d 8, 12–13 (2d Cir.1989). A strong inference of scienter can be satisfied by identifying circumstances indicating conscious behavior or presenting facts which show a motive for committing fraud and an opportunity for doing so. *Turkish v. Kasenetz,* 27 F.3d 23, 28 (2d Cir.

1994); *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Defendants concede, and the court agrees, that plaintiff has satisfied this burden as to the predicate acts of wire fraud. (Defs.Memo.Supp. at 7) The amended complaint claims defendants acted with scienter because, although they knew the security deposits were funds held in trust for Thai Airways, they "wilfully caused Thai Airways' funds to be wire transferred to nonsegregated accounts and to be commingled with other UAS group funds." (AC ¶ 21) Plaintiff then pleads facts suggesting conscious behavior by alleging that a letter from UAL's managing director acknowledging that UAS group cash reserves were depleted and consequently, the security deposits could not be returned, constituted "an admission that the security deposits were improperly ... commingled with other UAS group funds." (*Compare* Compl. ¶ 25 *with* AC ¶ 28) Moreover, motive can be inferred from the pleadings which recount the bankruptcy problems afflicting many UAS affiliates and allege that funds were transferred within the UAS group to defraud creditors and "avoid repaying Thai Airways and other lessees their security deposits." (AC ¶ 36) Finally, defendants had an opportunity to defraud because the funds were wire transferred directly into UAL's bank account. (AC ¶ 18)

Plaintiff is only partly successful in overcoming the Rule 9(b) threshold for the predicate acts of transporting converted funds in foreign commerce in violation of 18 U.S.C. § 2314. This statute provides, in relevant part:

> Whoever transports in interstate or foreign commerce any ... money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud ... [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both.

Plaintiff argues that its § 2314 claim alleges the security deposits were "converted," not "taken by fraud," and therefore should not be subject to the pleading requirements of Rule 9(b). While plaintiff correctly notes this crime does not always require a showing of fraud, *see United States v. Grainger*, 701 F.2d 308, 310 (4th Cir.), *cert. denied*, 461 U.S. 947, 103 S.Ct. 2129, 77 L.Ed.2d 1307 (1983), the amended complaint expressly states that the crime was committed through fraudulent acts. Specifically, the complaint alleges that the conversion of the security deposits and the transport of these funds to overseas accounts "constitute[d] a scheme to defraud." (AC ¶ 37) Where allegations of fraud accompany a § 2314 claim, Rule 9(b) requires that these predicate acts be pleaded with particularity. *Attick v. Valeria Assoc., L.P.*, 835 F.Supp. 103, 113 (S.D.N.Y.1992) (fraud elements of § 2314 must be pleaded with particularity); *Construction Technology, Inc. v. Lockformer Co., Inc.* 704 F.Supp. 1212, 1230 n. 12 (S.D.N.Y.1989) (same); *Beverly Hills Design Studio Inc. v. Morris*, 88 Civ. 5886, 1989 WL 85867, at * 6 (S.D.N.Y. July 26, 1989) (Section 2314 does not require showing of fraud, but Rule 9(b) applied because plaintiffs alleged crime was committed through "a scheme to defraud").

The alleged violations of § 2314 involving the conversion and transport of plaintiff's funds are pleaded in accordance with Rule 9(b) standards because the particulars of the scheme are specified, and facts giving rise to an inference of scienter are properly presented. (AC ¶¶ 12–22) However, plaintiff failed to particularize the § 2314 violations allegedly committed against other unnamed lessees. The amended complaint states simply

> violations of 28 [sic] U.S.C. § 2314 are continuing as the UAS Group ... continue[s] in the ordinary course of their business, to lease aircraft and to convert and transport trust funds received from lessees.

(AC ¶ 23) Plaintiff has failed to identify these hypothetical lessees, to detail the dates of their lease agreements, or to specify the time of the alleged conversion. Rule 9(b) is not satisfied by this skeletal accusation, devoid of details as to other victims and other frauds.

Plaintiff attempts to fill the gaps in the complaint by calling the court's attention to "information recently received" consisting of newly discovered lease agreements between

UAS group affiliates and other lessees. (Pl. Memo.Opp'n at 5; Davidson Aff. at 3–6) The introduction of this material is ineffectual, because as the court concluded in its prior opinion, "[e]ven if it were proper to look beyond the complaint to decide this motion, the additional facts proffered by Thai Airways fail to support any inference of criminal activity." *Thai Airways*, 842 F.Supp. at 1572. These documents prove merely that defendants did indeed lease aircraft to others; they do not show that other lessees were defrauded in the manner alleged by plaintiff. Moreover, an analysis of the leases reveals that the trust funds could not have been converted by defendants because, unlike the security deposits plaintiff wired directly to UAL, the other lessees' trust funds were paid to a third-party lender which provided financing to purchase the planes and, in return, received an assignment of the income generated by leasing the aircraft. (Reply Aff. ¶ 6; Defs. Exs. A–N)

### III.

 A pattern of racketeering can be comprised of only those fraud-based predicate acts which survive the Rule 9(b) analysis. Therefore, the eligible predicate acts in this case consist of two acts of wire fraud, and one violation of foreign transport of converted money.[1] This meager group of predicate acts fails to satisfy the continuity requirement necessary to form a RICO pattern. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900–01, 106 L.Ed.2d 195 (1989). Continuous conduct can be either a "closed period of repeated conduct," or an "open-ended concept" referring to "past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902. Plaintiff has not established either version of continuity.

 Continuity over a closed period can be demonstrated "by proving a series of related predicates extending over a substantial period of time." *Id.*; *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir.1994).

Courts have found insufficient threat of continuity "where the racketeering acts involved a brief period of time, relatively few criminal acts, an uncomplicated scheme, few participants, and few victims." *Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F.Supp. 579, 584 (S.D.N.Y.1989) (citations omitted). The current case involves few criminal acts and a short-lived scheme accomplished when the security deposit was transmitted and then commingled. Schemes of such brief duration generally do not qualify for closed-end continuity, because they fail to satisfy the "substantial period" requirement imposed by the Supreme Court in *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902. *See In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litigation*, 850 F.Supp. 1105, 1148 (S.D.N.Y.1993) (dismissing RICO claim based on fraud of two-month duration); *Three Crown Ltd. Partnership v. Caxton Corp.*, 817 F.Supp. 1033, 1044 (S.D.N.Y.1993) (six-month racketeering scheme "inadequate to establish closed-end continuity"); *Barrett v. United States Banknote Corp.*, 806 F.Supp. 1094, 1100 (S.D.N.Y.1992) (dismissing RICO claim based on single act of fraud committed over several months).

 Absent closed-ended continuity, the complaint must demonstrate the existence of "open-ended" continuity, or past conduct that carries with it the threat of future repetition. *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902. This threat can be substantiated by racketeering activity likely to extend into the future, or predicate acts that are part of the defendants' regular way of conducting business. *Id.* Without the claim that defendants continue to convert the trust funds proffered by other lessees, which claim did not survive the Rule 9(b) analysis, the facts do not justify the inference that defendants' acts carry the threat of continuing into the future, or represent their ordinary way of doing business. *See Passini v. Falke–Gruppe*, 745 F.Supp. 991, 993 (S.D.N.Y.1990) (no threat of continuity where facts do not show plaintiff made a practice of defrauding clients); *Azurite Corp. Ltd. v. Amster & Co.*, 730 F.Supp. 571, 581

---

1. As explained in the prior opinion, the allegation that violations of § 2314 persist because defendants allegedly continue to conceal and transport plaintiff's converted security deposit was rejected for "such activities do not constitute continuing criminal conduct." *Thai Airways*, 842 F.Supp., at 1572. The alleged violation was accomplished upon commingling the funds, and subsequent efforts to conceal the crime do not enlarge the scope of the fraud.

(S.D.N.Y.1990) (no continuity absent allegations that defendants had committed same or similar acts before). Accordingly, plaintiff's RICO claim is, once again, dismissed.

#### IV.

 Dismissal of the original complaint put plaintiff on notice of the pleading deficiencies jeopardizing its RICO claim, the only basis for federal jurisdiction. The original complaint was dismissed for failure to plead fraud with particularity and failure to allege a continuing threat of criminal activity. Because the amended complaint is similarly deficient, it is dismissed without leave to replead. *Armstrong v. McAlpin,* 699 F.2d 79, 93–93 (2d Cir.1983) (leave to amend properly denied when plaintiff already had one opportunity to plead fraud with greater specificity); *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 115 (2d Cir.1982) (no abuse of discretion in district court's refusal to give plaintiff third attempt to restate defective allegations).

For the foregoing reasons, Thai Airways has failed to state a RICO claim, and the court lacks jurisdiction over the state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Accordingly, the complaint is dismissed, without leave to replead.

SO ORDERED.