Ashok **KASHELKAR**, Plaintiff,

v.

**RUBIN & ROTHMAN,**
et al., Defendants.

No. 99 Civ. 10281(CM).

United States District Court,
S.D. New York.

April 29, 2000.

Ashok Kashelkar, Spring Valley, NY, pro se.

Joseph A. Gershman, Cahill Gordon Reindel, New York City, for defendants.

## MEMORANDUM DECISION AND ORDER DISMISSING THE COMPLAINT AND DENYING THE CROSS–MOTION FOR LEAVE TO AMEND

McMAHON, District Judge.

This is the second action to be filed with this Court (and assigned to this judge) arising out of Plaintiff Ashok Kashelkar's dissatisfaction with the resolution of his legal affairs. In this first action, Kashelkar sued the judge, the law secretary and the lawyers who were involved in a personal injury suit that arose out of a car accident involving his son. That lawsuit was dismissed by the Rockland County Supreme Court, which dismissal was affirmed by New York's appellate courts. Mr. Kashelkar alleged that his constitutional right to due process was violated by the handling of his case, specifically by the granting of an adjournment over his objection. This Court dismissed Plaintiff's frivolous complaint, which alleged, *inter alia*, RICO violations and various constitutional torts. *Kashelkar v. MacCartney*, 79 F.Supp.2d 370 (S.D.N.Y.1999).

In this matter, Mr. Kashelkar has filed more or less the same complaint, this time against Household International, Inc., a Chicago-based holding company; two of its subsidiaries, Household Bank F.S.B. and Household Recovery Services; and Household's lawyers, the law firm of Rubin & Rothman LLC, as well as four of its current or former lawyers. Defendants' first sin was to sue Kashelkar to recover money he had borrowed from Household Bank under a line of credit. (Household Action No. 1.) Their second sin was to make a pleading error in that case, naming a banking product, rather than the lending institution itself, as the Plaintiff, which led to the voiding of a judgment entered against Kashelkar in that action. Their third was to have the misfortune to purchase a credit card debt that Kashelkar owed to Chemical Bank and to bring a suit to recover those funds. (Household Action No. 2.) They knew not with whom they were dealing.

Mr. Kashelkar's complaints against Defendants are difficult to discern on the face of his 119 page (with 141 pages of exhibits) Complaint—even to a Court familiar with Plaintiff's mode of pleading. As best the Court can understand his theory, it is that Household has sued to collect the money owed by Kashelkar because he is a member of a minority group (of South–Asian ancestry); that the naming of the wrong entity as the party Plaintiff in Household Action No. 1 constitutes RICO violations or frauds; and that the Rubin & Rothman Defendants conspired with a state judge (again!) in Household Action No. 1 to deny him the right to a trial in that case (in which he ultimately prevailed without the need for a trial). As these claims are no more substantial than the claims asserted in Plaintiff's prior action, for the reasons articulated by Defendants in their memorandum of law, the present claims, too, are dismissed with prejudice. As there is no conceivable basis on which Plaintiff could state a viable claim under the relevant Federal RICO, conspiracy and civil rights laws on the facts pleaded, Plaintiff's motion for leave to replead is also denied.

## STATEMENT OF FACTS [1]

The following statement of facts is distilled from the Complaint and its exhibits.

---

**1.** All citations to Cplt. ¶___ in the Statement of Facts herein refer to the statement of facts

*The 1994 Action*

In April 1991, Plaintiff received a conditional check in the mail from Household Bank in the amount of $1,500. (Cplt. ¶ 6 & Ex. P–01.) The check stated in writing that by executing and depositing it, "You accept our offer and agree to the terms and conditions of the HFC Cash Reserve Account Agreement Form 5537NY(4–91) which you received and read and which is incorporated herein by reference." (Cplt.Ex. P–06; Gershman Aff't Ex. 1.) A copy of the HFC Cash Reserve Account Agreement ("Cash Reserve Agreement") was enclosed with the check. (Cplt.Ex. P–06; Gershman Aff't Ex. 1.) The Cash Reserve Agreement provided, in pertinent part:

> If you accept our HFC Cash Reserve Account offer, this Agreement will govern the terms and conditions of the Account. We want you to understand how your account works. Read this carefully and complete and sign our Account Opener in order to indicate your acceptance of the Account. . . .
>
> AVAILABLE CREDIT. Your HFC Cash Reserve Account is a revolving line of credit through which you may obtain funds up to a credit limit we assign you.
>
> PROMISE TO PAY. You promise to pay Household: (a) amounts borrowed under this Agreement; (b) Finance Charges, Administrative Charges (the late charge and bad check charge), and other charges provided in this Agreement; (c) insurance charges, if any; (d) collection costs permitted by applicable law, including reasonable attorneys' fees and court costs; and (e) amounts in excess of your credit limit that we may lend you, including Finance Charges.
>
> VARIABLE RATE. You agree that the monthly periodic rate used in determining your Finance Charge will be a variable rate which may change from month to month. The monthly periodic rate will be one-twelfth of the sum of the

section of the Complaint.

Prime Rate plus 9.9 percentage points. (Cplt.Ex. P–06; Gershman Aff't Ex. 1.)

On May 16, 1991, Plaintiff endorsed and deposited the check in his bank account (Cplt.Ex. P–06; Gershman Aff't Ex. 1), thereby accepting Household Bank's offer to open an HFC Cash Reserve Account. (Cplt.¶ 8.) Household Bank mailed Plaintiff a checkbook (Cplt.¶ 11), which he used to draw on his line of credit by depositing checks in his bank account. (Cplt.Ex.P–06.) Household Bank thereafter sent Plaintiff monthly statements showing how much money he had borrowed, the interest rate, and what his minimum payment was for that month. (Cplt.¶ 12.) For approximately two years, the arrangement appeared to work smoothly. Plaintiff drew on his line of credit from time to time by writing checks, received monthly statements, and made payments on the balance he owed. (Cplt.¶ 13.)

At some point in 1993, Plaintiff fell behind in his payments (Cplt.¶ 17), and Household Bank sent Plaintiff several letters and made a number of telephone calls asking him to resume payments. (Cplt. ¶¶ 15–17 & Ex. P–06.) In June of 1994, the law firm of Rubin & Rothman contacted Plaintiff on behalf of Household Bank by letter and telephone, asking that he contact the firm to discuss his outstanding debt. (Cplt.¶ 20.) Rubin & Rothman sent Plaintiff a second letter on September 7, 1994. (Cplt.¶ 22.) Plaintiff did not respond, and Household Bank then served a complaint signed by Robin Long, commencing an action in New York State Supreme Court in Rockland County to recover the $3200 Plaintiff owed Household Bank. (Cplt. ¶¶ 23–24 & Ex. P–05.)

In October 1994, Plaintiff filed an Answer and Counterclaim, and Household Bank replied in November 1994. (Cplt.¶ 26.) On April 15, 1995, Household Bank served a motion for summary judgment. (Cplt.¶ 28.) Plaintiff contends that service of this motion constituted a viola-

tion of his right to a trial. (Cplt.¶ 47.) Plaintiff filed responsive papers and cross-moved for summary judgment. (Cplt.¶¶ 37, 39, 53.) Household Bank opposed the cross-motion. (Cplt.¶ 47.) On August 24, 1995, Justice Rudolph granted Household Bank's summary judgment motion and denied Plaintiff's cross-motion. (Cplt.¶ 56.)

Plaintiff appealed Justice Rudolph's decision in September 1995. (Cplt.¶ 59.) On October 10, 1995, Household Bank notified Plaintiff that it had obtained a judgment against him. (Cplt.¶ 64.) On October 17, 1995, Household Bank served an Information Subpoena and Restraining Notices, signed by Keith Rothman, upon Chemical Bank and Bank of New York, the banks where Plaintiff maintained his personal and business banking accounts. (Cplt.¶ 65.) Service of the restraining orders caused $2,600 in Plaintiff's three accounts to be frozen. (Cplt.¶ 67.) Because his accounts were frozen, certain checks bounced. (Cplt.¶ 68.) Plaintiff claims he was charged $15 for each bounced check, and that in total the banks charged him $450 in fees for bounced checks. (*Id.*)

Plaintiff claims that from April–June 1995, he was virtually precluded from working because he was devoting so much time to litigating the $3,200 action with Household Bank. (Cplt.¶ 70.) Plaintiff further alleges that his inability to work, caused by his need to spend all of his waking hours preparing his defense, adversely affected his finances and precluded him from paying his automobile insurance premiums, which allegedly resulted in the cancellation of his insurance and the imposition of $360 in civil penalties by the New York State Department of Motor Vehicles. (Cplt.¶¶ 70–71.)

Plaintiff claims that he was also adversely affected by the freezing of his bank accounts, which resulted in a brief interruption of the payment of his life, disability and health insurance premiums. (Cplt.¶¶ 69, 74.) Plaintiff acknowledges that payment of his premiums had re-turned to normal by February 1996. (Cplt.¶ 74.)

On March 6, 1996, Plaintiff filed an Order to Show Cause or a Motion to Vacate the Judgment, on the grounds that the complaint had incorrectly named the Plaintiff in the state court action. (Cplt.¶¶ 95–97.) Because of an error in communication between Household Bank and Rubin & Rothman, the Plaintiff in the state court action was identified as HFC Cash Reserve Div. of Household Bank, F.S.B. (Cplt. ¶ 98 & Ex. P–36.) HFC Cash Reserve is a product provided by Household Bank, not a legal entity. (Cplt.Ex.P–36.) Household Bank filed a number of complaints around this time with the same infirmity. (*See* Cplt. ¶ 114 & Exs. P–37 and P–48.) On March 15, 1996, Household Bank acknowledged the error in papers submitted by Joseph Latona, and requested that the caption be amended to reflect the correct name of the entity to which Mr. Kashelkar owed money. (Cplt. ¶ 98 & Ex. P–36.) On May 3, 1996, Justice Rudolph ruled that the pleading error was jurisdictional, ordered that the judgment and the restraining orders be vacated, and stated that Household Bank was free to re-file the lawsuit with the correct name in the caption. (Cplt. ¶ 118 & Ex. P–40.) Plaintiff has never repaid the $3,200 he owes Household Bank from his Cash Management Account. (Cplt. pp. 1–119.) On May 21, 1996, Plaintiff served his banks with copies of Judge Rudolph's decision so that his accounts would be un-frozen. (Cplt. ¶ 119 & Ex. P–41.)

### The 1996 Action

In addition to reneging on his obligation to repay Household Bank, Plaintiff apparently stopped making payments on his Chemical Bank MasterCard account in 1995. (Cplt.Exs. P–49, P–51, P–52; Gershman Aff't Ex. 2.) Chemical Bank sold this account, among others, to Household Recovery. (Cplt.Exs. P–49, P–51, P–52; Gershman Aff't Ex. 2.) In February 1996, Rubin & Rothman sent Plaintiff a letter informing him that they were representing

Household Recovery in a claim against him for $7,880.18 arising out of this delinquent account. (Cplt.¶ 132.) Household Recovery filed a complaint in New York State Supreme Court, signed by Scott Rumph, for recovery of the $7,880.18. (Cplt.Ex.¶¶ 49–52.) Plaintiff answered and counterclaimed, Household Recovery replied in a pleading signed by Joseph Latona (Cplt.Ex.P–50), Plaintiff demanded a bill of particulars, and Household Recovery filed a bill on October 31, 1996, also signed by Joseph Latona. (Cplt.Ex.P–52.) Plaintiff does not allege that any thing else has happened in the 1996 action. (Cplt. pp. 1–119.) Plaintiff does not allege any misstatements, misrepresentations or injuries in connection with the 1996 action. (*Id.*)

Plaintiff, who alleges he is a Hindu born in India, has now filed this action against Household Bank, Household Recovery, and their corporate parent, Household International, as well as the law firm of Rubin & Rothman, which represented the Household entities in the state court actions, and four Rubin & Rothman attorneys who worked on the two actions. (Cplt. pp. 1–119.) Plaintiff alleges violations of the federal civil rights laws, and state negligence law, (RICO) arising out of these two garden-variety collection actions against him. (Cplt. pp. 1–119.)

## DISCUSSION

I. *Plaintiff's Civil Rights and Negligence Claims Are Time–Barred*

Plaintiff's civil rights and negligence claims (Counts 1–7) are barred because they were not brought within the three-year statute of limitations. *See Suffolk County Water Authority v. J.D. Posillico, Inc.*, 700 N.Y.S.2d 45, 46–47 (2d Dep't 1999) (affirming dismissal of negligence claim on the grounds that it was barred under 3–year statute of limitations for negligence claims); *Parker v. DeBuono*, No. 98 Civ. 5765, 1999 WL 771365, at * 1 (S.D.N.Y. Sept. 28, 1999) ("The statute of limitations on §§ 1983 and 1985 claims is three years."); *Ortiz v. Morgenthau*, 772 F.Supp. 1430, 1432 (S.D.N.Y.1991) ("The three-year limitations period is appropriate for actions pursuant to 42 U.S.C. §§ 1981 and 1985 ...."), *aff'd*, 962 F.2d 4 (2d Cir. 1992.).

Plaintiff's alleged civil rights claims arise solely out of the 1994 civil suit,[2] and thus are time-barred because they accrued more than three years prior to the commencement of this action. Plaintiff filed this suit on October 5, 1999. Therefore, any civil rights claims which accrued prior to October 5, 1996 are time-barred. All of Plaintiffs civil rights claims arose prior to October 5, 1996.

In New York, federal civil rights actions are governed by a three-year statute of limitations. *See Owens v.Okure*, 488 U.S. 235, 250–51, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (holding that New York statute of limitations for § 1983 actions was three years). "Federal civil rights claims accrue at the point in time when Plaintiff knows or has reason to know of the injury which is the basis of his action." *Parker*, 1999 WL 771365, at *1(citation omitted). *See also O'Malley v. GTE Service Corp.*, 758 F.2d 818, 820 (2d Cir.1985). The proper focus is on the time of the discriminatory or injurious act, "not the point at which the consequences of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). Plaintiff should have been on notice of the allegedly discriminatory decision to sue him no later than the date the suit was served on him—September 28, 1994.[3] Similarly, with regard to the 1996

---

2. *See* Cplt. Civil Rights pg. 1—"Basis of CIVIL RIGHTS action ... All of the following statements relate to 1994 civil suit, in Rockland County, Under Index No. 6239–94."

3. Even if a court were to determine that the claims did not accrue until the end of the lawsuit, when the judgment was vacated, the civil rights claims were time-barred as of May 3, 1999. (Cplt. SOFA ¶ 118.)

action, Plaintiff was presumably aware of any discriminatory or unlawful conduct towards him by Defendants as of the date he was served with the 1996 complaint, or on or about June 8, 1996, and therefore the three-year statute of limitations expired on or about June 8, 1999, approximately four months before this action was filed.[4]

While Plaintiff does not clearly articulate a negligence claim, any negligence arising out of the 1994 or 1996 actions would be similarly time-barred.

## II. *Plaintiff Fails to Plead Federal Civil Rights Claims*

In addition to being time-barred, Plaintiff fails to state a claim under the federal civil rights statutes. Plaintiff's discrimination claims fail because they allege nothing more than that he is a member of a minority and he was sued. The Complaint is devoid of any facts that might indicate discriminatory intent, or that Plaintiff was treated differently than whites. If Plaintiff's allegations were sufficient to state a discrimination claim, any member of any minority would have a discrimination claim every time he was sued. The § 1983 allegations fail to state a claim because Plaintiff has not and cannot plead state action, nor has he identified a constitutionally protected right that was violated.

## A. *Plaintiff Fails to State a Claim Under 42 U.S.C. § 1981*

■ To state a claim under § 1981, the complaint must allege that "(1) the Plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the Defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute...." *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993). "In order to survive a motion to dismiss,

the events of the intentional and purposeful. discrimination, as well as the racial animus constituting the motivating factor for the Defendant's actions must be specifically pleaded in the complaint." *Dove v. Fordham University*, 56 F.Supp.2d 330, 338 (S.D.N.Y.1999) (dismissing *pro se* complaint because it lacked "allegations of racial animus and intentional discrimination necessary to state a cognizable claim under § 1981").

■ This claim (Count 1) must be dismissed for the same reasons an identical claim was dismissed by this Court in *MacCartney*, on the grounds that "it fails to allege either facts supporting an inference of discriminatory intent or that Mr. Kashelkar was treated differently than white individuals who opposed requests for adjournment or who refused to submit affidavits that would create genuine issues of material fact in opposition to pending motions ..." *MacCartney*, 79 F.Supp.2d at 373–74. The only facts alleged are that Plaintiff is a non-white Hindu born in India. (Cplt. Civil Rights ¶ 22.) The rest of the claim is conclusory. For example, the Complaint states "[t]he CD [Defendants] have and demonstrated their deeply imbedded animosity towards 'non-whites' by conspiring against AK [Plaintiff], to defraud him of his rights and property, in the Rockland Proceeding ... CD determined, that AK being a 'non-white' must be 'stopped in track' from causing harm to the interests of the CD." (Cplt. Civil Rights ¶¶ 22(c)–(d).)

## B. *Plaintiff Fails to State a Claim Under 42 U.S.C. § 1983*

■ Plaintiff's § 1983 claim (Count 2) must be dismissed because (1) it does not, and cannot, plead state action, and (2) it fails to identify a constitutionally protected right. To state a claim under § 1983,

---

4. Similarly, many of the asserted RICO claims are time-barred pursuant to the four-year statute of limitations for civil RICO actions. *See Agency Holding Corp. v. Malley–Duff & Assocs.*, 483 U.S. 143, 156–57, 107

S.Ct. 2759, 97 L.Ed.2d 121 (1987.). Plaintiff filed suit on October 5, 1999. Therefore, any RICO claims which accrued prior to October 5, 1995 are time-barred.

Plaintiff must allege conduct, under color of state law, that deprived him of rights secured by the constitution or laws of the United States. *See Gangemi v. Johnson,* No. 98 Civ. 8470, 1999 WL 777861, at * 1 (S.D.N.Y. Sept. 30, 1999). Plaintiff cannot plead state action in this case because all of the Defendants are private parties as a matter of law. "It is well established that attorneys are not state officers, but private persons, for the purpose of the Civil Rights Act." *Stambler v. Dillon,* 302 F.Supp. 1250, 1255 (S.D.N.Y.1969). Therefore, Plaintiff cannot satisfy the state action requirement by alleging that Rubin & Rothman or the individual lawyer Defendants were state actors. An identical argument by this Plaintiff was rejected by this Court in *MacCartney,* in which the Court determined that "[a]s to the § 1983 claim, the Court notes that the MacCartney Defendants are not state actors. They are private attorneys who were defending the interests of a client in an action brought by Plaintiff in a state court. Plaintiff alleges no facts that would permit this Court to identify them with the authority of the state." *MacCartney,* 79 F.Supp.2d at 373–74.

Nor does use of the New York State court system amount to state action. *See Sundwall v. Weinstein & Assocs.,* No. 3:97 CV 405, 1997 WL 507724, at *3 (D.Conn. Aug.19, 1997) ("The only arguable state action referenced in Plaintiffs complaint is Defendants' use of the state and federal court systems. However, the actions of attorneys in litigating cases do not generally amount to conduct that can be attributed to the state.") (citing cases). Therefore, Plaintiff's attempt to allege state action via the lawyer Defendants' interactions with "state agent—Justice Rudolph (who was swayed by the R & R ar-

guments over AK's)" is insufficient as a matter of law. (Cplt. Civil Rights ¶ 51.)

 Nor has Plaintiff identified a constitutionally protected right that has been violated. The essence of Plaintiff's civil rights claims appears to be some kind of denial of access to the courts or First Amendment claim arising out of the 1994 action in that (1) Rubin & Rothman did not consent to each additional adjournment he requested or every voluminous affidavit he sought to submit, and (2) that by filing a meritorious summary judgment motion, the Rubin & Rothman Defendants denied Plaintiff his constitutional right to a jury trial and infringed upon his First Amendment rights.[5] (Cplt. Civil Rights ¶¶ 1–51.) Plaintiff appears to be under the misunderstanding that one is entitled to a trial before a jury in every court case, without regard to whether there exist any triable issues of fact.[6] But there is no unmitigated right to a trial in every case, as cases may be decided on a motion where there are no disputed issues of fact. A litigant is not entitled to a jury trial simply because he wants a forum to espouse his views. Moreover, Plaintiff was afforded ample opportunity to submit briefs and affidavits to the court in the 1994 action, *and he prevailed in that action*—albeit as a result of a pleading error, and not on the merits.

C. *Plaintiff Fails to State a Claim Under 42 U.S.C. § 1985*

 Plaintiff's § 1985 claims (Counts 3–5) fail for the same reason these identical claims failed before this Court in *MacCartney:* "Plaintiff has neither alleged any conspiratorial act with the particularity required nor set forth any factual allegation to support his conclusion that Defendants

---

5. The § 1983 claim also alleges due process and equal protection violations, but these claims are summarily dismissed for Plaintiff's failure to allege state action.

6. *See* Cplt. Civil Rights ¶ 15 ("AK had the right to present all material evidence of admissible nature; to expose counsel's perjury

and misconduct of counsels and the Plaintiffs witnesses—in Rockland Court proceeding, by conducting proceedings in open Court, by confronting, cross-examining and impeaching adverse witnesses, during requested hearing or trial; that being one of the most fundamental rights … under the U.S. Constitution.").

conspired against him ... because he was an Indian who practices the Hindu religion." *MacCartney,* 79 F.Supp.2d at 373.

Count 6 of the complaint appears to be a rehash of the five prior civil rights claims and, for the reasons stated above, is dismissed along with the other civil rights claims.

III. *The Complaint Fails to State a Claim Under RICO*

▮▮▮▮ To state a claim under RICO, 18 U.S.C. §§ 1961 *et seq.,* a plaintiff must allege (1) that the Defendant (2) through the commission of two or more "predicate acts" (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. *Morin v. Trupin,* 711 F.Supp. 97, 105 (S.D.N.Y.1989) (citation omitted). In addition, the plaintiff must allege that he was injured in his business or property by reason of a violation of § 1962. *See* 18 U.S.C. § 1964(c); *Morin,* 711 F.Supp. at 104. Plaintiff's RICO claims (Counts 8–17)—purportedly brought pursuant to §§ 1962(a)–(d)—fail to satisfy these requirements, and therefore are dismissed. The RICO claims' general failings will be discussed first, followed by some brief comments directed to the additional infirmities of each specific claim, §§ 1962(a)–(d).

A. *The Complaint Does Not Allege Commercial Injury*

Plaintiff has not adequately alleged that he suffered injury to his "business or property" as required to state a RICO claim. *See MacCartney,* 79 F.Supp.2d at 373. The only injury Plaintiff alleges is to his personal interests. In fact, the only reference to his commercial interests in the entire complaint is that a business bank account was frozen for a few months—but Plaintiff does not allege any injury to his business as a result. (Cplt. SOFA ¶¶ 65, 67.) Plaintiff alleges, *inter alia,* that he was forced to spend time and money to defend himself in the 1994 and 1996 lawsuits (Cplt. SOFA ¶¶ 26, 34, 54, 73), that he experienced difficulties with his personal insurance coverage (Cplt. SOFA ¶¶ 69–71, 74), and that his personal constitutional rights were in some way infringed upon. (Cplt. SOFA ¶ 47; Civil Rights ¶¶ 1–51.) None of this constitutes commercial injury.

B. *The Complaint Does Not Plead an Enterprise*

Plaintiff's RICO claims also fail because he has not pleaded an enterprise within the meaning of the RICO statute. To plead an enterprise, Plaintiff must allege facts showing "a group of persons associated together for a common purpose," which "is proved by evidence of an ongoing organization ... and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Plaintiff has failed to allege an enterprise with sufficient particularity, and one that is separate and apart from the purported pattern of racketeering activity. *See First Nationwide Bank v. Gelt Funding Corp.,* 820 F.Supp. 89, 98 (S.D.N.Y. 1993), *aff'd,* 27 F.3d 763 (2d Cir.1994), *cert. denied,* 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995). Plaintiff has not alleged and described a larger enterprise of which each of the Defendants is a part; instead, he has alleged that Rubin & Rothman, Household International, Household Bank, and Household Recovery are each an enterprise.[7] Plaintiff's allegations run afoul of the well-established rule that RICO persons and the RICO enterprise must be distinct from one another. *See Bennett v. United States Trust Company of New York,* 770 F.2d 308, 315 (2d Cir. 1985); *O & G Carriers, Inc. v. Smith,* 799

---

7. See Cplt. SOFA ¶ 57—"R & R, HI, HB–FSB and HRS are 'enterprises' conforming to definition in Title 18 U.S.C. Section 1961(4)...."

F.Supp. 1528, 1543 (S.D.N.Y.1992) (dismissing § 1962(d) claim on the grounds that it was vague and conclusory). Here, Plaintiff has alleged that the RICO persons—the Defendants—are each a RICO enterprise.

### C. The Complaint Does Not Allege Predicate Acts

■ The RICO actions are also dismissed on the ground that the Complaint fails to allege adequately the commission of predicate acts necessary to constitute "racketeering activity." Garden-variety pleading errors and the filing of routine motions do not constitute RICO predicate acts. To hold otherwise would turn every state court lawsuit into a predicate for a subsequent federal RICO action.

■ (1) *Obstruction Of Justice.* Plaintiff's claim that Defendants obstructed justice by litigating against him in state court fails to state a claim as a matter of law, because the federal obstruction of justice statute only applies to proceedings in federal court. *See O'Malley v. New York City Transit Authority,* 896 F.2d 704, 707 (2d Cir.1990). Therefore, counts 12 through 16 are dismissed.[8]

■ (2) *Extortion.* Plaintiff's "extortion" allegations similarly fail as a matter of law. Plaintiff claims Defendants violated both the Hobbs Act (18 U.S.C. § 1951) and state extortion statutes. (Cplt. ¶¶ 68–71; RICO ¶¶ 45(5)(A)–(B).) Extortion under both federal and New York law requires "the obtaining of property of another, with his consent, induced either by wrongful use of actual or threatened force, violence or fear, or under color of official

right." *Feeley v. Whitman Corp.,* 65 F.Supp.2d 164, 174 (S.D.N.Y.1999). However, a claim for extortion does not lie when the Defendant had a good faith claim of right to the money sought. *See O'Malley, supra,* 896 F.2d at 708–09; *Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 97 Civ. 8779, 1998 WL 50200, at *5–6 (S.D.N.Y. Feb.9, 1998). First, Plaintiff has no extortion claim because Household had a good faith claim to the money in both the 1994 and 1996 actions, as on each occasion the money sought belonged to Household; it had loaned funds to Plaintiff (or was the assignee of the lender) which Plaintiff refused to repay. To find otherwise would mean that every time a party brings a legitimate lawsuit or seeks to enforce a valid judgment, the party would be guilty of extortion. Second, no property was given with Plaintiff's consent, as required by the statute. Plaintiff vigorously opposed both lawsuits. *See Goldberg,* 1998 WL 50200, at *5.

■ (3) *Mail and Wire Fraud.* Plaintiff claims that Defendants violated the mail fraud statutes by using the mail to (1) send court papers, unsolicited checks, and invoices for legal services, and (2) receive payment for legal services and repayment of "illegally distributed funds through unsolicited checks." (Cplt. RICO ¶¶ 15–21.) Plaintiff claims Defendants violated the wire fraud statute by transmitting and receiving "falsified" legal papers, receiving credit card payments, and making and receiving calls from customers. (Cplt. RICO ¶¶ 22–24.) Far from pleading conduct that would constitute a violation of the mail and wire fraud statutes, the Complaint does nothing to negate the proposition that

---

**8.** *See also Sundwall,* supra, 1997 WL 507724, at *2 ("Plaintiff's other alleged predicate acts involve mail fraud and obstruction of justice claims, both arising out of the Defendants' alleged fraudulent activities in representing their clients in Connecticut state and federal courts. These allegations are insufficient, as a matter of law, to constitute the necessary predicate acts under RICO."); *Gunn v. Palmieri,* No. 87 CV 1418, 1989 WL 119519, at * 1 (E.D.N.Y. Sept.29, 1989) ("If serving and fil-

ing an answer or a motion by any Defendant in a federal action could be considered obstruction of justice, this Court would be flooded with motions to amend complaints by Plaintiffs seeking to add RICO claims based upon mail fraud and obstruction of justice as soon as an answer was served. Such an interpretation of the RICO statute is untenable."), *aff'd,* 904 F.2d 33 (2d Cir.1990), *cert. denied,* 498 U.S. 1049, 111 S.Ct. 758, 112 L.Ed.2d 777 (1991).

these actions were completely lawful, and constituted nothing more than the legitimate conduct of attorneys representing their clients in pending litigation, and Household conducting lawful lending activities. This Court has soundly rejected the contention that such conduct by attorneys can constitute mail or wire fraud. *See Morin,* 711 F.Supp. at 105 (dismissing a similar claim and holding that "Congress could not have intended that the mail fraud statute sweep up correspondence between attorneys, dealing at arm's length on behalf of their parties, concerning an issue in pending litigation.... Subjecting the letters in issue to the mail fraud statute would chill an attorney's efforts and duty to represent his or her client in the course of pending litigation."); *D'Orange v. Feely,* 877 F.Supp. 152, 156 (S.D.N.Y. 1995) (dismissing RICO claims against attorneys who had allegedly sent fraudulent accountings through the mail and holding that the attorney's actions "cannot be considered predicate acts because they constitute legitimate conduct of attorneys acting on behalf of a client in the course of pending litigation"). These allegations fail to plead RICO predicate acts for the additional reason that they fail to satisfy the pleading requirements of a fraud claim.[9] Federal Rule of Civil Procedure 9(b) states that in averments of fraud, "the circumstances constituting fraud ... shall be stated with particularity". Fed.R.Civ.P. 9(b). "Rule 9(b) ... applies to civil RICO claims for which fraud is the predicate illegal act. In the RICO context, Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading, give particulars as to the respect in which Plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those

responsible for the statements." *Gerstenfeld v. Nitsberg,* 190 F.R.D. 127, 130–31 (S.D.N.Y.1999) (citations and quotations omitted).

In addition, the Plaintiff must (1) identify the purpose of the mailing within the Defendant's fraudulent scheme and (2) allege facts that give rise to a strong inference of fraudulent intent. *See Id.* Plaintiff does not satisfy any of these requirements. Plaintiff gives no particulars about the alleged statements, what they were, who made them, when and where they were made, what role they played in the scheme, or any facts which give rise to an inference of fraudulent intent. *See MacCartney,* 79 F.Supp.2d at 373 (dismissing mail and wire fraud claims for insufficient particularity). Last, Plaintiff must allege reliance to establish injury "by reason of" any predicate act of mail or wire fraud, which he does not. *DiFiore v. DiLorenzo,* 1997 WL 722697, at *6 (E.D.N.Y. Sept.19, 1997). "The predicate acts of an alleged RICO violation must then be the proximate cause of the Plaintiff's injury." *Id.* Here, as in *DiFiore,* "Plaintiffs have alleged no facts to show that any acts of mail fraud were relied on by the Plaintiffs in any way that was a substantial factor causing their injury" *Id.,* and thus the RICO claims based on mail and wire fraud are also dismissed.

(4) *The Travel Act.* Plaintiff has not plead a violation of the Travel Act, 18 U.S.C. § 1952, because he has not plead that Defendants engaged in "unlawful activity" as that term is defined for purposes of the Travel Act. *See* 18 U.S.C. § 1952(b). The only act mentioned in the complaint which would constitute unlawful activity for purposes of The Travel Act is extortion, and for the reasons stated above, Plaintiff has not plead extortion.[10]

---

**9.** For example, Plaintiff attempts to plead wire fraud by stating "HI, HB–FSB, HRS and other entities affiliated with III, *millions of times,* over the similar long period, in return, *have received* payments from the "unwitting consumes" [sic] by way of the consumers using their credit cards, for payments; giving

their consents for such payments, under duress; receiving from and making Interstate Telephone calls to HI, HB–FSB & HRS and other entities; violating 18 USCS 1343...." (Cplt. RICO ¶ 23.)

**10.** 18 U.S.C. §§ 241, 242, 245, and 39 U.S.C. § 3009, are not predicate acts under the

## D. *Additional RICO Infirmities*

The Complaint also fails to state a RICO claim for reasons unique to each subsection of § 1962. To state a violation of § 1962(a), Plaintiff must allege that Defendants used income received from a pattern of racketeering activity to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce. The Complaint fails to allege that Defendants received income from racketeering activity, acquired an interest in an enterprise, or established an enterprise. Therefore, for the reasons mentioned above, no violation of § 1962(a) has been stated. *See Morin,* 835 F.Supp. 126, 131–32 (holding that to state a § 1962(a) claim Plaintiff must allege that the Defendants "received income derived from a pattern of racketeering activity and invested it in the acquisition of any interest in, or the establishment or operation of, a RICO enterprise"). No violation of § 1962(b) is stated because Plaintiff fails to allege "that the Defendant acquired or maintained an interest in a RICO enterprise through a pattern of racketeering activity." *Morin,* 835 F.Supp. at 133; *Dornberger v. Metropolitan Life Insurance Co.,* 961 F.Supp. 506, 524–25 (S.D.N.Y.1997) ("[T]o state a claim under § 1962(b), a Plaintiff must allege an injury by reason of the Defendant's acquisition or maintenance of an interest in or control of an enterprise."). The Complaint fails to allege a violation of § 1962(c) because it does not allege in anything other than conclusory terms that any of the Defendants conducted or participated in the enterprise. *See Reves v. Ernst & Young,* 507 U.S. 170, 177–79, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Moreover, the Rubin & Rothman Defendants are alleged to have done nothing more than provide legal services to Household Bank and Household Recovery, which has been held to be insufficient to meet the "operation and management" test under *Reves. See Morin,* 835 F.Supp. at 133–36 (S.D.N.Y.1993).

Last, the complaint fails to allege a violation of § 1962(d) because it does not adequately allege a violation of §§ 1962(a)–(c), nor does it allege a conspiracy to violate §§ 1962(a)–(c), except in conclusory terms, which is insufficient to state a claim. *See O & G Carriers,* 799 F.Supp. at 1543 (dismissing § 1962(d) claim on the grounds that it was vague and conclusory).

In addition, the RICO claims are dismissed as to Rothman and Rumph because these individuals are only alleged to have committed one act, and therefore cannot have committed the two predicate acts necessary to state "racketeering activity", a required element in a RICO claim. *See Lee v. Kim,* No. 97 Civ. 4406, 1998 WL 20003, at *3 (S.D.N.Y. Jan. 20, 1998). Rumph is alleged to have signed the 1996 Complaint (Cplt. SOFA ¶ 154), while Rothman is alleged to have signed the information subpoena and restraining notices served on Kashelkar's banks. (Cplt. SOFA ¶ 65.) Moreover, the complaint is utterly devoid of any allegations concerning Household International (a remote holding company), nor are there any allegations suggesting that it would be appropriate to pierce the corporate veil, and therefore the complaint must be dismissed as to it. Last, Plaintiff has no standing to complain about alleged misrepresentations made to others, and therefore paragraphs 136–147 of the Statement of Facts, and the exhibits associated therewith, are stricken pursuant to Fed.R.Civ.P. 12(f).

## IV. *Plaintiff's "Statutory Negligence" Claim and Other Claims*

■ This claim (Count 7) is completely indecipherable, and is dismissed for vagueness. It states, in part, "[t]he CD wilfully flouted letter and spirit of every law, rule, regulation and provisions of the U.S. and well as New York Constitution, at will." (Cplt.¶ 51.) To the extent the complaint

RICO statute. *See* 18 U.S.C. § 1961(1). Nor are any of the alleged state statutory "criminal violations" RICO predicate acts either

(Cplt. Criminal Violations ¶¶ 24–25), except possibly extortion, which has been addressed above.

attempts to state a fraud claim (Cplt. Conspiracy to Defraud), it fails for, among other reasons, its failure to plead either (1) detrimental reliance or (2) facts which give rise to a strong inference of fraudulent intent. *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80, 668 N.E.2d 1370 (1996) (stating that elements of a fraud claim are "a misrepresentation or a material omission of fact which was false and known to be false by Defendant, made for the purpose of inducing the other party to rely on it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."); Fed.R.Civ.P. 9(b). Plaintiff does not and cannot plead reliance because all of the alleged "misrepresentations" appeared in legal papers in the course of adversary litigation; they were not statements made by Household upon which Plaintiff relied or changed his position in reliance thereon. (Cplt. SOFA ¶ 123–134.) *See Nineteen New York Properties Limited Partnership v. 535 5th Operating Inc.*, 211 A.D.2d 411, 412–13, 621 N.Y.S.2d 42, 43 (1st Dept.1995) ("The only fraud alleged is with respect to statements made in the complaint and in support of Plaintiffs motion; there could be no detrimental reliance on such statements."). The particularity issue has already been addressed in the mail and wire fraud section above, and the same failings apply here, particularly the absence of facts giving rise to an inference of fraudulent intent and an explanation as to why many of these statements are false.

 The Complaint does not plead a violation of 39 U.S.C. § 3009 by Household because that statute concerns the mailing of unsolicited *merchandise* to customers, not unsolicited offers of credit. Household did not send Plaintiff any merchandise—it sent him an offer to open a line of credit, which he was free to accept or reject. To accept, Plaintiff had to endorse and deposit the check which had been sent to him. The federal courts have held that this statute, by its terms, does not apply to such offers. In a similar case involving life insurance, *Kipperman v. Academy Life Insurance Co.*, 554 F.2d 377, 380–81 (9th Cir.1977), the Ninth Circuit rejected the contention that an unsolicited insurance policy, which Plaintiff was free to accept or reject, was merchandise within the meaning of 39 U.S.C. § 3009.

## V. Motion for Leave to Amend

Plaintiff's cross-motion for leave to amend the complaint is denied. Because the claims are all time-barred, it would be futile to permit amendment. Moreover, this Court is convinced that Plaintiff cannot state any claim against these Defendants, under either Federal or State law, based on the facts alleged in the Complaint.

## CONCLUSION

The Court directs the Clerk to enter judgment dismissing the Complaint with prejudice, with costs on the motion. There being no contractual basis for an award of attorneys' fees in this case (which is not a collection case), Defendants' motion for attorneys' fees is denied.